In re Joseph Edward
PETERSON, Debtor.

**Bankruptcy No. 385–01098(13).**

United States Bankruptcy Court,
D. Oregon.

Sept. 24, 1985.

Peter G. Raphael, Portland, Or., for WSLGA.

Richard M. Friz, Portland, Or., for debtor.

MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

In this chapter 13 case Washington Student Loan Guaranty Association (WSLGA) filed objections to confirmation of the debtor's plan.

The debtor's plan provides that the debtor will pay to the trustee $270 per month until á debt owing to the State of Oregon, Child Support Division, for delinquent child support is paid in full and the other allowed unsecured claims have been paid 25%. It is contemplated that it will take 36 months to complete the plan.

Among the debts listed in the Chapter 13 Statement is a debt owing to WSLGA of $6,175 representing a balance owing upon a student loan. This debt constitutes approximately 43% of the total unsecured debt.

The debtor's budget shows monthly income of $1,449 and monthly expenses of $1,179. The surplus is $270, all of which will be paid to the trustee until the plan has been completed. WSLGA makes no assertion that the monthly income is understated, that it is likely that the debtor's future income will increase, or that any of the items of expenses are overstated or excessive.

In support of its objections WSLGA asserts two arguments. The first is that under § 1322(b)(5) the debtor is required to treat the student loan debt as a long term obligation under which the debtor must cure any default within a reasonable time and maintain regular payments, with whatever balance might still be due at the completion of the plan, to be a debt unaffected by a discharge granted under § 1328(a). The second argument is that, if it is determined that § 1322(b)(5) is not mandatory upon the debtor, the court should refuse confirmation on the ground that the plan is not filed in good faith because the plan does not exercise the option afforded by § 1322(b)(5) in regard to the student loan debt.

■ It is clear to the court that the provisions of § 1322(b)(5) are not mandatory. Subsection (a) of § 1322 states the matters which must be included in a plan. Subsection (b) states what matters a plan may include. As a consequence none of the matters mentioned in subsection (b) are requirements but merely matters which the debtor may, at his option, include in a plan.

The second argument calls into play the requirements of § 1325(a)(3) and 1325(b).

Prior to the 1984 amendments to the Bankruptcy Code, there was no provision similar to the present subsection (b) of § 1325. Before the 1984 amendments there was controversy in the courts as to what was required of a plan to constitute a plan filed in "good faith." Courts of Appeal which have considered the question of good faith have suggested a number of tests. Included in such tests were the questions of whether the plan included debts which might be nondischargeable in a chapter 7 liquidation and consideration of the amount of the payments to be made by the debtor compared to the debtor's surplus of income over expenses. While such decisions listed the factors to be considered, none of them have expressed the weight to be given to the various factors to be considered. See, *Flygare v. Boulden* 709 F.2d 1344 (10th Cir.1983) and *In re Estus,* 695 F.2d 311 (8th Cir.1982).

The court for the Ninth Circuit stated in *In re Goeb,* 675 F.2d 1386 at 1390–91 (9th Cir.1984):

"We do not attempt at this time to compile a list of relevant considerations. Rather, bankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan.

"In this case, some facts strongly suggest that the Goebs proposed their plan in good faith. They did not elect Chapter 13 over Chapter 7 to cheat their creditors: their plan would repay secured and priority creditors in full, which might not have occurred under Chapter 7; and apparently the unsecured creditors would have received *nothing* under Chapter 7. Moreover, the plan does not leave the Goebs any surplus.

"In finding bad faith, the bankruptcy court relied exclusively on the facts that (1) the Goebs elected to proceed under Chapter 13 to take advantage of an incidental feature of that chapter (deferring payment of back taxes), and (2) they did not intend to substantially repay unsecured creditors. *In re Goeb,* 4 BR at [735] 736–37 [ (Bkrtcy.Cal.1980) ]. Although these two considerations are relevant, they are not determinative. Unless the court can muster other evidence of bad faith on remand, it must confirm the Goebs' proposed plan."

This court has found no reported decisions of the District Court for the District of Oregon, the Ninth Circuit Court of Appeals, nor for that matter any decision of other Courts of Appeal, which have held that inclusion in a plan of a debt which might not be dischargeable in a chapter 7 liquidation case will automatically constitute a plan filed in bad faith. This is for the obvious reason that a debtor is permitted to discharge such debts under the provisions of § 1328(a). It would not make sense to state that it is illegal, immoral, or bad faith for a person to utilize a statute which has been enacted for his benefit.

"We cannot argue with Brite that the plan was not proposed in good faith so as

to bar its confirmation under 11 U.S.C. § 1129(a)(3) (1982). First, Brite's claim that the unsecured creditors' status was changed to effectuate the cram down does not go to whether the purpose of Sun Country's proposed plan is to reorganize or whether the plan has a reasonable hope of success. Congress made the cram down available to debtors; use of it to carry out a reorganization cannot be bad faith. * * * " *In Re Sun Country Development, Inc.*, 764 F.2d 406, 408 (5th Cir.1985).

A brief review of the purposes of bankruptcy is appropriate in interpretation of the statutes. It is commonly agreed that bankruptcy serves two principal purposes. One is to give the debtor a fresh start free of the burdens of excessive debt. This is accomplished by granting a discharge. In chapter 7 this occurs when the time for filing of objections to discharge has expired. In chapter 11 it occurs upon confirmation of the plan. In chapter 13 it occurs when the debtor has either completed his plan or has applied for a discharge. The second purpose is to provide equitable treatment for creditors. Distribution upon unsecured claims is on a pro rata rather than a first-come, first-served basis.

From time to time the bankruptcy statutes have been amended to better accomplish these purposes. Prior to 1966, tax debts could not be discharged in a chapter 7 case. In that year the statutes were amended to permit discharge of a tax debt which had accrued more than three years prior to the filing of the petition in bankruptcy. This amendment worked to the disadvantage of tax claimants but served the purpose of a fresh start to a debtor.

■ Under present law, the debtor in a chapter 13 case may obtain a discharge of debts which would not be dischargeable in a chapter 7 case. § 1328(a). This statute works to the disadvantage of the holders of such claims. It serves the fresh-start purpose of bankruptcy. But there is a trade-off. In chapter 7 the debtor may receive a discharge by surrendering his non-exempt property to the trustee. The debtor has no duty to obligate any portion of his future earnings toward payment of his debts. He, however, will not be relieved of those types of debts defined as non-dischargeable by § 727. On the other hand, in chapter 13, if the trustee or the holder of an allowed secured claim objects to the confirmation of the plan, the debtor must, in order to obtain a discharge of such otherwise non-dischargeable debts, obligate all of his projected disposable income for a period of three years. § 1325(b). Congress has therefore determined that if a debtor will comply with this section, he should be free of all his prepetition debt excepting debt for alimony or support and debt upon a long term obligation which will not be paid during the term of the plan. § 1328(a). This being the case, the fact alone that the plan includes debts which would not be dischargeable in a chapter 7 case, should not be a ground for refusing confirmation of the plan.

■ In the present case the plan is not in full compliance with § 1325(b) in that it does not specify that the debtors will pay $270 for a period of 36 months. Based upon the expected claims, it would take 36 months to pay a dividend of 25% to general unsecured creditors. If not all creditors were to file claims, however, it might be possible to complete the plan in less than 36 months. This defect could be cured by amending the plan by interlineation to provide that the payments to the trustee shall continue for 36 months and that the dividend upon unsecured allowed claims shall be approximately 25%. If not all creditors were to file claims or the amounts of the claims were to be less than contemplated by the debtor, the dividend would then exceed 25%.

If the debtor will consent to the above proposed amendments, it would be appropriate for the court to enter an order confirming the plan. WSLGA does not point to any reason why the court should not confirm the debtor's plan other than the two above-mentioned arguments, neither of which is well founded.

This memorandum opinion shall constitute findings and conclusions under Bankruptcy Rule 7052.