**In re Cathy Michele BASS, Dorothy Jean McKee, Courtney Jackson, Sr., Michelle Jackson, David Frederick Austen, Barbara Helen Austen, Debtors.**

Nos. 00–16856, 00–17131, 00–17216, 00–17217.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Aug. 27, 2001.

Eric W. Goering, Robert A. Goering, Cincinnati, OH, for debtors.

Andrew A. Paisley, Hudson, OH, Hilary B. Bonial, Dallas, TX, John D. Schlotter, Roswell, GA, John A. Schuh, Cincinnati, OH, for creditors.

Max Flow Corp. on Behalf of MBNA America Bank NA and its assigns, Carol Stream, IL, pro se.

## MEMORANDUM ON OBJECTIONS TO CONFIRMATION

J. VINCENT AUG, Jr., and JEFFERY P. HOPKINS, Bankruptcy Judges.

The four cases captioned above are before the Court on objections to confirmation filed by the Chapter 13 Trustee, Margaret A. Burks ("Trustee").[1] The plans at issue are percentage plans that propose to pay less than a 100% dividend on allowed unsecured claims. The issue presented is whether the plans satisfy the disposable income requirement of 11 U.S.C. § 1325(b)(1).[2] This is a core proceeding. 28 U.S.C. § 157(b)(2)(L).

All four plans propose a monthly plan payment that is equal to the difference between Total Combined Monthly Income reflected on Schedule I and Total Monthly Expenses reflected on Schedule J. The Trustee does not challenge the necessity of the Debtors' expenses pursuant to § 1325(b)(2)(A). Moreover, the Trustee does not dispute that all projected disposable income will be applied to the plans if the assumptions used by the Debtors to draft the plans prove to be correct over

---

1. Although the objections are pending before different judges, they will be adjudicated by this joint memorandum because they present a single legal issue upon which the judges wish to establish consistent rulings. This memorandum accompanies a companion memorandum which addresses the disposable income test in the context of a postconfirmation plan modification. *See In re Fields,* Case No. 00–10476 (Bankr.S.D.Ohio Aug. 27, 2001).

2. Section 1325(b)(1) provides:
   If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
   (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

the first thirty-six months of the plan. However, the Trustee's experience leads her to believe that this does not always happen. A debtor might receive unanticipated income over the first thirty-six months of the plan that is not reasonably necessary for maintenance or support (e.g., wage increases, tax refunds, inheritances, gifts, lottery proceeds, insurance proceeds, proceeds from causes of action, or proceeds from the sale of property). Additionally, claims actually paid through the plan may differ from a debtor's preconfirmation assumptions (e.g., debtor overestimates claims, creditors fail to file timely proofs of claim, court sustains objection to a claim, or secured creditor obtains relief from the automatic stay and the secured claim is no longer paid through the plan).[3] If, within the first thirty-six months, an event occurs that proves incorrect a preconfirmation assumption that is related to the calculation of disposable income, the Trustee believes that § 1325(b)(1)(B) entitles her to any resulting increase in disposable income. Consequently, the Trustee encourages the use of a form plan that contains the following certification:

> If during the pendency of the Plan, the length of the Plan is less than 36 months and the Plan percentage is less than 100%, then debtor(s)' Counsel and the Trustee shall file an Agreed Entry raising the percentage to unsecured creditors to the correct percentage at 36 months.

**3.** The first two examples are attributable to the fact that, in this Court, confirmation typically occurs prior to the expiration of the claims bar date.

**4.** Although the Trustee has not identified the issues as such, the practical effect of her certification: (1) converts the plan from a percentage plan to a base plan or pot plan; and (2) requires debtors to commit all actual disposable income for thirty-six months.

**5.** Judge Lundin identifies four of the more widely used Chapter 13 plans as follows: (1)

If a debtor chooses not to include a similar certification in the plan, the Trustee seeks a verbal certification of the same effect at the first meeting of creditors. The Debtors presently before the Court refused to make a similar certification, either written or oral. The instant objections followed.

The practical effect of the Trustee's objections is to raise two issues under § 1325(b)(1)(B). The first issue is whether a percentage plan of less than 100% violates § 1325(b)(1)(B). The second issue is whether § 1325(b)(1)(B) requires actual or projected disposable income.[4]

### PERCENTAGE PLANS VS. BASE PLANS

■ Traditionally, Chapter 13 debtors have filed percentage plans in this Court.[5] Because payments are complete under a percentage plan "when allowed unsecured claim holders have been paid the stated percentage and all other payments required by the plan have been made," 2 Keith M. Lundin, Chapter 13 Bankruptcy § 170.1 (3rd ed.2000), the percentage plan creates a potential conflict with the disposable income requirement. Notwithstanding a plan's apparent compliance with § 1325(b)(1) at the time of confirmation, it may later be discovered that a debtor is on schedule to complete payment of the relevant percentage before submitting all projected disposable income because claims actually paid through the plan turned out to be different from the debtor's preconfirmation assumptions.[6]

the "percentage" plan; (2) the "base" plan; (3) the "base or percentage" plan; and (4) the "base or percentage whichever is greater" plan. *See* 2 Keith M. Lundin, Chapter 13 Bankruptcy § 170.1 (3rd ed.2000). Because the pending issue does not arise within the context of a percentage plan of 100%, all percentage plan references hereafter refer only to percentage plans of less than 100%.

**6.** According to Trustee, the most common cause of this scenario is the realization of fewer allowed unsecured claims than sched-

The Austens' plan provides a good illustration of this potential conflict.[7] The plan requires a monthly payment of $1,000. This figure represents the difference between Total Combined Monthly Income reflected on Schedule I and Total Monthly Expenses reflected on Schedule J. Thus, the Austens' projected disposable income under § 1325(b)(1)(B) is $36,000 ($1,000 × 36). Consequently, the plan can be confirmed over a § 1325(b) objection so long as $36,000 is committed to the Trustee. The plan, however, does not commit $36,000 to the Trustee.

Because the proposed length of the plan is "estimated," nothing in the plan requires the Debtors to make the $1,000 payments for thirty-six months. To the contrary, the plan only requires monthly payments to the Trustee until she pays a 70% dividend on allowed unsecured claims. If enough creditors scheduled as holding unsecured claims fail to file a timely proof of claim, the 70% dividend will be paid prior to the thirty-sixth month. Moreover, if one or more of the Debtors' secured creditors obtains relief from the automatic stay, then the corresponding monthly plan payment on account of the secured claims (being $250 and $400) will be applied to the payment of allowed unsecured claims and the 70% dividend will be paid even earlier. Finally, there is the additional possibility that a timely filed claim will be disallowed or reduced as a result of a successful objection, thereby causing the plan to be completed earlier still. The Austens, along with the other subject Debtors, contend they should be able to benefit from these "windfall" situations.

The Seventh Circuit, in dicta, has recognized the inherent problem with percentage plans:

> [A]pproval of a percentage plan in the first instance is troubling.... A percentage plan, by its very nature, does not seem to constitute a plan by which the debtor will contribute all disposable income to the plan because the debtor may retain a portion of disposable income if fewer than anticipated claims are filed. Rather, to fulfill the disposable income requirement, it would seem that any surplus of funds must be funneled into the plan, not returned to the debtor.

*In re Witkowski*, 16 F.3d 739, 746 n. 11 (7th Cir.1994) (affirming plan modification to increase percentage paid on allowed unsecured claims after certain scheduled unsecured creditors did not file timely proofs of claim). The foregoing language from *Witkowski* is particularly significant given that the Sixth Circuit, also by dicta, deemed it worth repeating:

> Like the Seventh Circuit, we find "troubling" the approval of a "percentage plan" in a case in which a creditor has objected to confirmation and has triggered the 11 U.S.C. § 1325(b) requirement that the debtors contribute their entire disposable income for at least three years to the plan.

*In re Welch*, No. 97–5080, 1998 WL 773999, at *3 n. 6 (6th Cir. Oct. 11, 1998) (affirming discharge of debtors where creditor appealed discharge order when debtors prepaid percentage plan through lump-sum payment).

---

uled unsecured claims as a result of: (1) unsecured creditors failing to file timely claims; (2) debtors overestimating scheduled unsecured claims; and (3) sustained objections to claims. Another cause is the removal of a secured claim after the creditor obtains relief from the automatic stay.

**7.** The potential conflict arises under any percentage plan that provides less than a 100% dividend on allowed unsecured claims. The Austen plan is highlighted for illustrative purposes simply because its $1,000 monthly payment makes it easier to understand the math involved.

This Court is aware of one published decision that has addressed this issue. *See In re Peterson,* 53 B.R. 339 (Bankr.D.Or. 1985). In *Peterson* the debtor filed a percentage plan proposing to pay $270 per month until the trustee paid a 25% dividend on allowed unsecured claims. Assuming all scheduled claims would be allowed and paid without default, the plan would take thirty-six months to complete. Upon objection to confirmation by an unsecured creditor, the court denied confirmation under § 1325(b) where the failure of scheduled creditors to file timely claims would result in the debtor paying less than $9,720 ($270 × 36) into the plan. *Id.* at 341.

Pursuant to the foregoing authority, particularly the Sixth Circuit's footnote in *Welch,* this Court concludes that a percentage plan cannot be confirmed over a timely objection pursuant to § 1325(b). In the event that a debtor cannot propose a percentage plan that pays a 100% dividend on allowed unsecured claims, a debtor must propose a "base" or "pot" payment to obtain confirmation over a § 1325(b) objection. *See* Arnold B. Cohen, *Pot Plans Should Be Replacing Percentage Plans in Chapter 13,* 4 J.Bankr.L. & Prac. 305 (1995); 2 Keith M. Lundin, Chapter 13

Bankruptcy § 166.1 (3rd ed.2000). Three out of four of the more commonly used plans incorporate such a "base" payment.[8]

In a *simple* base plan, the total of all payments that will be made by the debtor during the life of the plan is the base amount against which progress under the plan is measured.... When the debtor has paid [the base amount] into the plan, the plan is consummated and the debtor is entitled to a full-payment discharge. The amount that will be paid to unsecured claim holders from the base is mathematically calculated by subtracting all other payments that must be made to secured claim holders, priority claim holders and so forth.

2 Keith M. Lundin, Chapter 13 Bankruptcy § 170.1 (3rd ed.2000). To obtain confirmation in the face of a § 1325(b) objection, the base amount cannot be less than the amount of the debtor's projected disposable income under § 1325(b)(1)(B). In the Austen case, for example, the Debtors must propose a base that is no less than $36,000 ($1,000 × 36).[9]

■ Although the base plan takes care of disposable income objections, it creates a problem concerning the best interest test under 11 U.S.C. § 1325(a)(4) because the base plan does not bind the debtor to the

---

**8.** *See supra* note 7.

**9.** The *Peterson* court tried to achieve the same result through a slightly different approach. By dicta, the court proposed the following solution:

This [§ 1325(b) ] defect could be cured by amending the plan by interlineation to provide that the payments to the trustee shall continue for 36 months and that the dividend upon unsecured allowed claims shall be approximately 25%. If not all creditors were to file claims or the amounts of the claims were to be less than contemplated by the debtor, the dividend would then exceed 25%.

*Peterson,* 53 B.R. at 341. This procedure presents a problem, however, if the debtor

defaults within the first thirty-six months. Under those circumstances, the debtor would complete the thirty-six month period without paying all projected disposable income. The base plan, on the other hand, requires the debtor to continue payments until the base amount is paid, regardless of the passage of time. *See* 2 Keith M. Lundin, Chapter 13 Bankruptcy § 166.1 (3rd ed.2000) ("It makes most sense to interpret the three-year period in § 1325(b)(1)(B) to require ... a specified amount totaling a known (projected) amount of money. The 'base plan' concept for drafting Chapter 13 plans implements this view of § 1325(b)(1)(B). Any other method of counting the three-year period threatens to reward the debtor for defaulting under the plan.").

repayment of a minimum percentage of debt. This problem is solved through the use of a "base or percentage, whichever is greater" plan, which "is now the predominant form of Chapter 13 plan." 2 Keith M. Lundin, Chapter 13 Bankruptcy § 170.1 (3rd ed.2000). Under this plan, total payments into the plan are stated as "a base of [projected disposable income] or [percentage paid on unsecured claims under hypothetical liquidation], whichever is greater." *See id.* Payments under the plan are complete when the disjunctive condition is satisfied. *Id.* Using the Austen case as an example, assume that a hypothetical liquidation would yield a 25% dividend to unsecured creditors. To obtain confirmation over a § 1325(b) objection, the Austens would have to commit to the plan the following payment: "a base of $36,000 or 25%, whichever is greater."[10]

### ACTUAL VS. PROJECTED INCOME

■ The Trustee's objections also raise the issue of whether § 1325(b)(1)(B) requires actual or projected disposable income. This issue was decided by the Ninth Circuit on substantially similar facts. *In re Anderson,* 21 F.3d 355 (9th Cir.1994) involved a Chapter 13 trustee who asked the debtors to sign a "Best Efforts Certification" that would require them to pay all of their actual disposable income over the first thirty-six months of the plan.[11] The debtors refused to sign the certification and the trustee objected to confirmation. The Ninth Circuit agreed with the debtors:

[The trustee's] argument has a fatal flaw: § 1325(b)(1)(B) does not require debtors to [assure that all actual dispos-

able income will be paid over the first thirty-six months of the plan]. Instead, § 1325(b)(1)(B) requires provision for "payment of all projected disposable income" as calculated at the time of confirmation, and we reject the Trustee's attempt to impose a different, more burdensome requirement[.]

*Id.* at 358; *see also In re Killough,* 900 F.2d 61 (5th Cir.1990) (potential for overtime was not definite enough to be characterized as projected income).

To the contrary, the Eighth Circuit has held that § 1225(b) (the same language as § 1325(b) incorporated under Chapter 12) requires debtors to contribute actual disposable income for thirty-six months. *See Rowley v. Yarnall,* 22 F.3d 190 (8th Cir. 1994). Although the Eight Circuit conceded that the plain language of § 1225(b) supports the interpretation that a debtor is required to commit only projected disposable income, the court concluded that such a construction "yields an absurd result" that "would reduce § 1225(b) to a nullity." *Id.* at 192. The Court feared that a projected income standard would enable debtors "to reject the debt without consulting the lender," *id.* at 193, "if they simply 'predict' that disposable income will be zero." *Id.* at 192. This concern is allayed by a debtor's duty to complete and file accurate schedules and the potential consequences of a failure to do so. Moreover, even under circumstances like *Rowley* where it may be more difficult to project income (e.g. family farmers or salespeople on commission), the trustee or an unsecured creditor can always seek to capture actual,

---

**10.** This is not to say that the Bankruptcy Code mandates the use of a "base or percentage, whichever is greater" plan in all circumstances. The need for such a plan arises only if a § 1325(b) objection is made and the plan proposes to pay creditors less than a 100% dividend.

**11.** The decision suggests that the trustee implemented certifications through a periodic review of a debtor's finances and modification of the plan payment.

unprojected income through the process of plan modification.[12]

This Court respectfully concludes that *Anderson* reflects the better statutory analysis. This conclusion is shared by Judge Lundin in his highly-respected treatise. *See* 2 Keith M. Lundin, Chapter 13 Bankruptcy § 164.1 (3rd ed.2000) (referring to *Anderson* as a "good model for other courts" and "the better-reasoned decision" in comparison to *Rowley*).

█ Judge Lundin notes the following problems if § 1325(b) is construed as requiring actual disposable income:

> Courts that have required the debtor to project future wage increases, no matter how uncertain, do not offer a balancing methodology for projecting decreases in income and do not suggest how the debtor will project future increases in expenses....
>
> Including future changes in income quickly becomes an administrative nightmare for the Chapter 13 trustee and an expensive problem of monitoring for creditors. Imagine a jurisdiction that interprets projected in § 1325(b) to require that Chapter 13 debtors include all future income changes in the plan. Any such requirement, to be meaningful, must include that all Chapter 13 debtors file periodic reports of income and expenses after confirmation.... These schedules are not easily completed by debtors at the filing of the original petition. Multiply the variety of forms, the range of content and the varying quality of information by the number of pending Chapter 13 cases in the district. The volume of paper would be staggering.

Will debtors' counsel be obligated to participate in preparing these periodic reports? What will happen to the cost of a routine Chapter 13 case if debtor's counsel has to track down and confer with the debtor every six months or every year and prepare (under oath?) reports of income and expenses?

> With each reporting period, the trustee would be obligated to review every pending Chapter 13 case to determine whether income and expenses have adjusted to require a change in contributions to the plan. In jurisdictions with large Chapter 13 programs, this would require hundreds or thousands of additional staff hours in the office of the Chapter 13 trustee. Any creditor that undertakes to monitor the periodic filings of income and expense statements would quickly realize that it is an expensive search for a needle in a haystack: future wage increases for most Chapter 13 debtors will be offset by reasonable increases in expenses; many Chapter 13 debtors will actually experience reductions in disposable income during the life of the plan. There is no good evidence that monitoring income and expenses after confirmation on a program-wide basis is cost effective or will improve the average outcome for creditors in Chapter 13 cases.

*Id.* By contrast, the *Anderson* standard "leaves the bankruptcy courts with discretion to assess the reality of each debtor's projections of income." *Id.* On a case-by-case basis, the party objecting under § 1325(b) must at least provide some evidentiary support for the contention that a

---

**12.** The Trustee has expressed concern that if she can't bind the debtor to unanticipated future income at the time of confirmation, she won't be able to capture the same pursuant to a postconfirmation motion to modify because some courts hold that § 1325(b) has no application to modification under § 1329(a). Even

if § 1325(b) is not applicable to a motion to modify filed by a trustee or unsecured creditor, such a construction does not preclude the movant from capturing unprojected income by postconfirmation modification. *See In re Fields*, Case No. 00–10476 (Bankr.S.D.Ohio Aug., 2001).

particular source of income can be projected at the time of confirmation. *See e.g., In re Heath,* 182 B.R. 557 (9th Cir. BAP 1995); *In re Abner,* 234 B.R. 825 (Bankr. M.D.Ala.1999); *In re Kuehn,* 177 B.R. 671 (Bankr.D.Ariz.1995).

Although the Sixth Circuit has not addressed this issue in the context of a § 1325(b) confirmation objection, *In re Freeman,* 86 F.3d 478 (6th Cir.1996) suggests that § 1325(b) requires only projected disposable income. *Freeman* involved the issue of whether a debtor's motion to modify a confirmed plan violates § 1325(b) when the proposed modification seeks to retain a portion of a tax refund received postconfirmation. According to the court's analysis, the answer depends upon whether the refund in question was projected at the time of confirmation. This Court believes that the Sixth Circuit, if confronted with the issue of whether § 1325(b)(1)(B) precludes confirmation of a plan that does not commit all actual disposable income, would follow the projected disposable income standard set forth in *Anderson.*

For the foregoing reasons, this Court holds that § 1325(b)(1)(B) does not require a debtor to commit all actual disposable income to obtain confirmation over a timely objection. *But see e.g., In re Riggleman,* 76 B.R. 111 (Bankr.S.D.Ohio 1987) (Clark, J.) ("In this case debtor has not provided for increases in disposable earnings which are too uncertain to project as of the effective date of the plan. But an amendment providing for semi-annual earning and expense statements and appropriate increase in contributions will make the plan confirmable."); *In re Krull,* 54 B.R. 375 (Bankr.D.Colo.1985) (although future wage increases "are too speculative at this point as to be regarded as 'projected' income," plan would not be confirmed unless debtor amended plan to commit 50% of any net increases); *In re Akin,* 54 B.R. 700 (Bankr.D.Neb.1985) (confirmation denied under § 1325(b) where "[t]here is

no statement in the plan that as the debtor's disposable income increases it will automatically be applied to the plan.").

### CONCLUSION

For the foregoing reasons, the Trustee's objections to confirmation will be sustained on the basis that, upon timely objection, § 1325(b)(1)(B) precludes confirmation of a percentage plan of less than 100%. The Trustee's objections to confirmation will be overruled to the extent that the Debtors need not incorporate the Trustee's certification language into their plan. Separate orders to this effect will be entered.