**In re Cleopatra JONES, Debtor.**

No. 03–62325.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 12, 2003.

John C. Lange, Gold, Lange & Majoros, PC, Southfield, MI, for Debtor.

David Wm. Ruskin, Office of the Chapter 13 Standing Trustee, Southfield, MI, trustee.

*OPINION DENYING CONFIRMATION OF CHAPTER 13 PLAN*

MARCI BETH MCIVOR, Bankruptcy Judge.

This matter came before the Court at a hearing on November 20, 2003 on confirmation of Debtor's Plan and the Trustee's Objections. Because the Debtor's Plan does not comply with 11 U.S.C. § 1325(a)(4) (best interest of the creditors) nor with 11 U.S.C. § 1325(b)(1)(B) (disposable income), confirmation of the Debtor's Chapter 13 Plan is DENIED.

I

*FACTUAL BACKGROUND*

Debtor, Cleopatra Jones, filed her proposed Chapter 13 Plan on August 12, 2003. The Plan provides that Debtor shall make payments in the amount of $133 per month for a term of thirty-six months. The Plan is a base plan, without any specified amount designated for unsecured creditors. It does not provide that general unsecured creditors must be paid a fixed amount or fixed percentage; instead it provides that general unsecured claims shall be paid "their pro rata share of funds remaining after payment of all superior classes of creditors." Plan I.D.8. (treatment of general unsecured claims). Attached to the Plan is a Worksheet which

sets forth the "estimated percentage to unsecured creditors" as "Base."

The Standing Trustee objected to confirmation of the Plan on two grounds.[1] First, the Trustee contends that the Plan lacks good faith in violation of 11 U.S.C. § 1325(a)(3). Second, the Trustee objects because the Plan fails to require that 100% of all future tax refunds received by Debtor during the Plan be remitted to the Trustee pursuant to 11 U.S.C. § 1325(b)(1)(B).

## II

### ANALYSIS

#### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

#### B. Good Faith

■ In order to confirm a plan of reorganization under Chapter 13 of the Bankruptcy Code, the requirements set forth in 11 U.S.C. § 1325 must be satisfied. The Trustee contends that the Plan lacks good faith in violation of 11 U.S.C. § 1325(a)(3), which requires that a plan be "proposed in good faith and not by any means forbidden by law." To determine whether a plan has been proposed in good faith, the Sixth Circuit has held that this factual determination must be made on a case by case basis by examining the totality of the circumstances. *In re Okoreeh–Baah*, 836 F.2d 1030, 1033 (6th Cir.1988).

The court must focus on whether the debtor sincerely intended repayment of the prepetition debt consistent with the debtor's available resources. *Id.* Courts must examine the following factors:

1) the amount of proposed payments and the amount of the debtor's surplus;

2) the debtor's employment history, ability to earn and likelihood of future increases in income;

3) the probable expected duration of the plan;

4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5) the extent of preferential treatment between classes of creditors;

6) the extent to which secured claims are modified;

7) the type of debt sought to be discharged and whether such debt is non-dischargeable in Chapter 7;

8) the existence of special circumstances such as inordinate medical expenses;

9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) the burden which the plan's administration would place upon the trustee.

*Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 859 (6th Cir.1988) (adopting factors set forth in *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)).[2]

---

1. The Trustee's Objections, filed October 10, 2003, set forth four objections in total. Objections # 3 and # 4 were resolved by the parties.

2. Previously, the Sixth Circuit in *Okoreeh–Baah* cited with approval the factors set forth in *Matter of Kull*, 12 B.R. 654 (S.D.Ga.1981),

*aff'd sub nom. In re Kitchens*, 702 F.2d 885 (11th Cir.1983). *Okoreeh–Baah*, 836 F.2d at 1032 n. 3. The Caldwell court reviewed the *Kull* factors and the *Estus* factors and found that they were basically the same, but the *Estus* factors were more succinct and clear. 851 F.2d at 859.

In addition to these eleven factors, the Sixth Circuit added the following four considerations:

1) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code;

2) good faith does not necessarily require substantial repayment of the unsecured claims;

3) the fact that a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13; and

4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, per se, evidence of bad faith but may be considered as part of the totality of the circumstances analysis.

*Caldwell,* 851 F.2d at 859–60. Good faith does not require a minimum repayment of unsecured debts. *In re Owens,* 82 B.R. 874, 878 (Bankr.S.D.Ohio 1987). If the plan proposes to pay all of the debtor's disposable income over three years, and it otherwise meets the requirements of section 1325, the plan should be confirmed. *Id.*

Here, the Trustee contends that Debtor's plan was not proposed in good faith because the unsecured creditors cannot discern the amount that they will be paid under the Plan. Also, the Trustee argues, "The uncertainty of the amount, if any, to be paid to the unsecured creditors is compounded by the lack of incentive inherent in a base Plan for the Debtor to object to proof of claims. Moreover, any attorney fees awarded throughout the duration of the Plan directly erodes the already indeterminate amount of funds available to unsecured creditors." Objection to Plan, ¶ 1.

These objections do not point out debtor misconduct, abuse, or inequitable conduct in proposing the Plan. The Trustee does not argue that any of the relevant factors used by the Sixth Circuit to determine good faith exist in this case. Thus, the Trustee's objection to confirmation on the ground that Debtor's Plan violates 11 U.S.C. § 1325(a)(3) is denied.

## C. *Best Interest of the Creditors*

While the Court finds that Debtor's Plan was proposed in good faith, it fails the best interest of the creditors test. Section 1325(a)(4) of the Bankruptcy Code provides that the court shall confirm a plan if:

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; . . .

In order to determine whether general unsecured creditors are receiving more than they would receive under Chapter 7, a specific dividend must be promised to them. In furtherance of the best interest of the creditors test, Local Rule 3015–1(b) provides that every plan must contain an analysis of what creditors would receive if the case were a chapter 7 case. L.B.R. 3015–1(b)(1) (E.D.M.)

The lack of essential plan provisions compelled the court to deny plan confirmation in *In re Pedersen,* 229 B.R. 445

---

Note that while the factors used to determine whether a plan was proposed in good faith under section 1325(a)(3) are applicable to a determination of whether a petition was filed in good faith under 1307(c), the standards are not identical. "Courts should be more reluctant to dismiss a case on the grounds of a bad faith filing than to deny confirmation because a plan was not proposed in good faith." *In re Butt,* 1999 WL 1038241 at *5 (Bankr.S.D.Ohio Sept.30, 1999).

(Bankr.E.D.Calif.1999). In that case, the court held that a plan which did not provide for a percentage dividend or a specific term length could not be confirmed.

> The failure to specify the length of the plan and a percentage dividend payable to general unsecured creditors strikes at the heart of the form plan's provision for payment of general unsecured claims. If, for example, a 36 month plan term and a 10% dividend is inserted into the form plan, the general unsecured creditors will receive no less than 10% on account of their claims. But if the filed general unsecured claims are less than those scheduled, the claim holders will receive more than a 10% dividend. This is because the debtor is required to continue making plan payments for the entire length of the plan even if the 10% dividend is exceeded.

229 B.R. at 452.

The *Pedersen* court also pointed out in *dicta* that merely setting forth a set term for an undefined base plan (a plan that provides for a stream of payments for a stated term and also pays general unsecured creditors whatever remains after payment of administrative expenses, secured claims, and priority claims) does not make the plan confirmable. First, unsecured creditors have no notice at confirmation of how much they are likely to receive on their claims, and requiring general unsecured creditors to wait years to receive an unknown dividend would discourage their participation in Chapter 13. Second, it cannot be determined whether the plan will pay the unsecured creditors what they would receive in a Chapter 7 proceeding. 229 B.R. at 453.

Like the plan in *Pedersen*, Debtor's Chapter 13 Plan in this case merely provides that general unsecured claims shall be paid "their pro rata share of funds remaining after payment of all superior classes of creditors" and the attached Worksheet sets forth the "estimated percentage to unsecured creditors" as "Base." The Plan cannot be confirmed because it fails to give general unsecured creditors notice of how much they are likely to receive and because it cannot be determined whether the plan will pay the unsecured creditors what they would receive in a Chapter 7. Confirmation must be denied because the Plan fails to meet the requirement of section 1325(a)(4), the best interest of the creditors test.

### D. Tax Refunds as Disposable Income

The Trustee also objects because the Plan fails to require that 100% of all future tax refunds received by Debtor during the Plan be remitted to the Trustee pursuant to 11 U.S.C. § 1325(b)(1)(B). As explained above, under section 1325(b)(1)(B), a Chapter 13 plan must provide that the debtor's projected disposable income during the duration of the plan will be applied to make payments under the plan. The Sixth Circuit has held that tax refunds constitute disposable income that must be applied to plan payments. *In re Freeman*, 86 F.3d 478 (6th Cir.1996).

At the hearing, Debtor's counsel stated that the Debtor would modify the Plan to provide that tax refunds would be paid into the Plan. However, Debtor's counsel did not propose to extend the term of the Plan if tax refunds were received. The Court finds that Debtor's proposal violates 11 U.S.C. § 1325(b)(1)(B) because the addition of the tax refund income (or any other extra income) would allow the Debtor to complete the Plan without committing all her projected disposable income to the Plan. Because Debtor's Plan fails to require that the term of the Plan will be extended or that the base amount or percentage to unsecured creditors will be increased if additional income comes into the

Plan, the Plan fails the disposable income test and may not be confirmed.

### E. Other Types of Base Plans

The Court finds that the Plan cannot be confirmed because it violates both the "best interests of the creditors" requirement (11 U.S.C. § 1325(a)(4)) and the "projected disposable income" requirement (11 U.S.C. § 1325(b)(1)(B)) of the Bankruptcy Code. However, there is a great deal of confusion about the term "base plan." While the Plan in this case does not comply with the Code, there are variations of the "base plan" which clearly do comply with the Code. Specifically, plans which specify a base amount or a percentage dividend, *whichever is greater,* will satisfy the Code requirements for confirmation (assuming that all other grounds are satisfied).

▇ The *Pedersen* court, 229 B.R. at 452–53, delineated the advantages and disadvantages of different types of base plans. The court explained that just as base plans with an unspecified base should not be confirmed, neither should base plans that provide for a specific dollar amount. Where the base is calculated and set forth as a dollar amount to be shared by general unsecured creditors pro rata, the unsecured creditors still cannot determine what they are likely to receive without knowing the total amount of general unsecured claims. *Pedersen,* 229 B.R. at 453. Because confirmation occurs in this district before the claims bar date, the total amount of unsecured claims is not known.[3] Claims actually paid through the plan may differ from the assumptions made in the plan. The debtor may under or overestimate the general unsecured claims, creditors may fail to timely file their proofs of claim, the court may sustain an objection to a claim, or a secured creditor may obtain relief from the stay and that secured claim may not be paid through the plan. *In re Bass,* 267 B.R. 812, 814 (Bankr.S.D.Ohio 2001). In addition, the debtor lacks incentive to object to claims because he is bound to pay a set dollar amount on the general unsecured claims, whether he manages to pare down such claims or not.[4] *Pedersen,* 229 B.R. at 453.

▇ Similarly, base plans that provide for a fixed percentage dividend are also problematic. Such plans cannot be confirmed because they fail the disposable income test under Section 1325(b)(1)(B) of the Code. *In re Bass,* 267 B.R. at 814; *Pedersen,* 229 B.R. at 453.[5] The Code sets forth the disposable income test as follows:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be

---

3. *Pedersen* was decided by an Eastern District of California Bankruptcy Court. There, like here, courts confirm plans before the claims bar date. *Pedersen,* 229 B.R. at 452 n. 12.

4. A lack of incentive to object to claims is also a problem in this case where the Plan provides that the Debtor will pay general unsecured creditors their pro rata share of whatever is remaining after payment of superior classes of creditors. Under the Plan, Debtor is obligated to pay all sums remaining whether or not Debtor has managed to pare down the general unsecured claims.

5. Of course, this issue does not arise in the context of a plan which provides general unsecured creditors a 100% dividend. *Bass,* 267 B.R. at 815 n. 7.

applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B). In other words, a debtor must apply all disposable income [6] to payments under the plan.

A percentage dividend plan does not satisfy the disposable income requirement because it provides that the plan is complete when the debtor has made all payments required by the plan and the debtor has paid the general unsecured creditors a stated percentage dividend. As a result, a debtor may complete payment of the percentage dividend prior to the submitting all projected disposable income to the plan where the claims actually paid through the plan are less than originally calculated. Claims actually paid can be less than originally calculated in the plan because the debtor overestimated the claims, some general unsecured creditors fail to timely file their proofs of claim, or the court sustains objections to claims. *Bass,* 267 B.R. at 814. The *Pedersen* court set forth a good example of the problem created by percentage plans:

> Suppose a debtor schedules $100,000.00 in general unsecured claims and proposes a plan to pay a 10% dividend over 36 months to the holders of those claims. If only $50,000.00 of these claims are reduced to proofs of claim, instead of paying a total dividend of $10,000.00, the debtor will complete his or her plan after paying just $5,000.00. Such a debtor would be entitled to a discharge even though he or she did not make payments for the full 36–month plan term.

*Pedersen,* 229 B.R. at 453. *Cf. In re Fields,* 269 B.R. 177 (Bankr.S.D.Ohio 2001) (trustee moved to modify percentage plan to increase dividend to 100% because upon passage of claims bar date, allowed unsecured claims were less than originally estimated).

In order to meet the requirements of the Code and to avoid the problems of unspecified amount base plans, dollar amount base plans, and percentage plans, courts favor plans that provide for a "base or percentage, whichever is greater." Keith M. Lundin, *Chapter 13 Bankruptcy* § 170.1, p. 170–2 (3d ed.2000). In this type of plan, payments to be made are set forth as a base of projected disposable income or a percent paid on unsecured claims under hypothetical liquidation, whichever is greater. Judge Lundin explains that this type of plan could provide, for example, for a base of $3,600 or 75% of allowed unsecured claims, whichever is greater.

> If allowed unsecured claims turn out to be larger than indicated in the schedules, the amount that the debtor will have to pay to complete payments will be greater than $3,600. If allowed claims are smaller than anticipated, the payment of $3,600 into the plan will still be required but will result in the payment of a greater percentage than 75 percent.

*Id.* at 170–3. The "base or percentage, whichever is greater" plan is advantageous because it allows confirmation prior to the claims bar date because the actual amount of claims does not affect confirmation, except in the rare case where the debtor's estimate of claims is so mistaken that the minimum payment is impossible. *Id.*

Judge Lundin explains how "base or percentage, whichever is greater" plans work in practice:

---

**6.** "Disposable income" is defined by the Code as income which is received by the debtor and which is not reasonably necessary for the maintenance or support of the debtor or his dependents. 11 U.S.C. § 1325(b)(2).

To make a base or percentage, whichever is greater, plan work, the debtor must estimate total allowed unsecured claims and then calculate the percentage of repayment that will result if the base is paid in full. If allowed claims ultimately are higher or lower than the debtor's estimate, then the final percentage that can be paid from the base will vary accordingly. If the debtor overestimates unsecured debt or, more typically, when allowed unsecured claims total less than expected because creditors fail to timely file claims, the base amount automatically increases the percentage payment to allowed unsecured claim holders. Slight underestimation of unsecured claims will simply extend the plan for a few months to meet the minimum percentage in the plan. If allowed claims are significantly higher than estimated, the plan may exceed the statutory maximum of five years[7] to complete payment of the minimum percentage to unsecured claims. In jurisdictions that routinely confirm base or percentage, whichever is greater, plans before expiration of the claims bar date, the trustee reviews confirmed plans soon after the claims bar date and moves to modify or to dismiss plans than cannot be completed as confirmed.[8]

*Id.* at 170–5. This Court agrees with Judge Lundin that if the base plan is drafted correctly, it satisfies the Code and provides flexibility to accommodate a post confirmation claims bar date.

The Trustee also objected at the hearing claiming that the Local Rules provide that every plan must have a worksheet attached, and the form worksheet provides a blank for a percentage dividend. Thus, the Trustee reasoned, the plan must provide for a percentage dividend. The Court finds that this objection has no merit. Local Rule 3015–1(b)(2) provides that attached to every plan there must be "a worksheet on a form available from the clerk, illustrating the anticipated dividend to unsecured creditors if the plan is successfully completed." L.B.R. 3015–1(b)(2) (E.D.M.) The Rule requires that the plan set forth an "anticipated dividend." It does not require that the anticipated dividend be set forth as a percentage. While the form worksheet does contain a blank for an "estimated percentage to unsecured creditors," the worksheet does not have the force of law. It is merely a form generated to comply with the Code and the Local Rules. Neither the Code nor the Local Rules require the anticipated dividend to be stated in a percentage.[9]

---

7. 11 U.S.C. § 1322(d) (plan may not provide for payments over a period exceeding three years, unless the court for cause approves longer term; term may not exceed five years).

8. Some have argued that "base or percentage, whichever is greater," plans penalize debtors who underestimate their claims because if the claims come in significantly higher, the debtor will not be able to pay the minimum percentage dividend. This penalty is fair. The debtor is obligated to file accurate schedules. If the schedules are not accurate, it is appropriate for the trustee to move to modify or dismiss the plan. *Pedersen*, 229 B.R. at 453.

9. According to *The Attorney Handbook for Chapter 13 Practitioners*, the Trustee favors

percentage plans, while recognizing that debtors may propose other types of plans.

> Class 8 claims are general unsecured claims. The Plan should be clearly identified as a base plan (which proposes to pay a specific dollar amount to all creditors), an unsecured base plan (which proposes a specific dollar amount that unsecured creditors will split pro-rata), or a percentage plan (which proposes a minimum percentage to unsecured creditors after payment of administrative, secured and priority claims). Percentage plans are preferred and most often proposed. The percentage dividend or base amount should match the calculation in the attached worksheet.

In summary, courts, including this Court, favor setting forth the dividend as a "base or percentage, whichever is greater." Plans with this type of provision comply with both the "best interest of creditors" requirement and the "projected disposable income" requirement set forth in 11 U.S.C. § 1325.

### III

### *CONCLUSION*

Being fully advised in the premises, having read the pleadings, and for the reasons stated above, the Court DENIES confirmation of the Debtor's Chapter 13 Plan. The Debtor's Plan does not comply with 11 U.S.C. § 1325(a)(4) (best interest of the creditors) nor with 11 U.S.C. § 1325(b)(1)(B) (disposable income).

*The Attorney Handbook for Chapter 13 Practi-*   *tioners* (2d ed.1999), p. 21.