*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0143P (6th Cir.)
File Name: 01a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: SHERI WHORLEY
MOREHEAD, a/k/a SHERI
LYNN WHORLEY,

              _Debtor._

_____

SHERI WHORLEY MOREHEAD,

              _Appellant,_

      _v._

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

              _Appellee._

No. 99-6430

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 98-00192—Charles M. Allen, District Judge.

Argued: March 14, 2001

Decided and Filed: May 3, 2001

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; GAUGHAN, District Judge.*

_____

**COUNSEL**

_____

**ARGUED:** Joseph H. Bennett, WESTERN KENTUCKY LEGAL SERVICES, INC., Owensboro, Kentucky, for Appellant. Richard L. Walls, BENNETT, BOWMAN, TRIPLETT & VITTITOW, Owensboro, Kentucky, for Appellee. **ON BRIEF:** Joseph H. Bennett, WESTERN KENTUCKY LEGAL SERVICES, INC., Owensboro, Kentucky, for Appellant. Richard L. Walls, BENNETT, BOWMAN, TRIPLETT & VITTITOW, Owensboro, Kentucky, for Appellee.

_____

**OPINION**

_____

PATRICIA A. GAUGHAN, District Judge. Debtor Sheri Whorley Morehead appeals the district court's order affirming a decision of the bankruptcy court which held certain fund transfers to Appellee State Farm Mutual Insurance Company (hereafter "State Farm") were not avoidable preferential transfers. For the reasons set forth below, we **REVERSE** the judgment of the district court.

**I.**

The parties stipulated to the following facts before the bankruptcy court. State Farm filed a lawsuit against Morehead on January 3, 1993 and obtained a judgment against her on March 24, 1995. State Farm issued a wage garnishment to Morehead's employer on or about

_____

*The Honorable Patricia A. Gaughan, United States District Judge for the Northern District of Ohio, sitting by designation.

contradicts 11 U.S.C. § 547(e)(3), which states that a transfer cannot occur until the debtor has acquired rights in the property transferred.

It is illogical to find that a debtor may acquire rights in future wages when they have not yet been earned. The mere fact that a creditor perfects a garnishment order on a debtor's future wages does not guarantee that the debtor will ever earn any wages. The debtor retains the choice to work for the garnishee employer, to work for someone else or not to work at all. To the extent the debtor chooses to work for the garnishee employer, any earnings during the 90-day preference period established by 11 U.S.C. § 547(b)(4)(A) that are transferred to the creditor pursuant to a garnishment order are avoidable as a preferential transfer, regardless of the date of perfection of the garnishment order.

The bankruptcy courts which have considered 11 U.S.C. § 547(e)(3) have almost uniformly held that a wage garnishment is an avoidable transfer where the garnishment is of wages earned during the preference period. *See, e.g., Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815 (B.A.P. 8th Cir. 1998); *In re Johnson*, 239 B.R. 416 (Bankr. M.D. Ala. 1999); *Arway v. Mt. St. Mary's Hosp. (In re Arway)*, 227 B.R. 216 (Bankr. W.D. N.Y. 1998); *In re Fagan*, 26 B.R. 212 (Bankr. W.D. Ky. 1982); *Cox v. General Electric Credit Corp. (In re Cox)*, 10 B.R. 268 (Bankr. D. Md. 1981). *But see Wilkey v. Community Methodist Hosp. (In re Edwards)*, 219 B.R. 970 (Bankr. W.D. Ky. 1998) (citing *Battery One-Stop* for the proposition that "to avoid a post-judgment garnishment as a preference, the garnishment order must be served upon the garnishee within the preference period"). *See also* 1 David G. Epstein et al., Bankruptcy § 6-15 (1992); 5 Collier on Bankruptcy § 547.05[7][b] (Lawrence P. King ed., 1996).

**III.**

For the foregoing reasons, we **REVERSE** the judgment of the district court.

because in that case the garnishee employer turned over the garnished funds to the state court prior to the beginning of the 90-day preference period. *Id*. at 1561. Thus, it is clear that the wages at issue were not earned by the debtor during the preference period.

The decisions from other circuits relied on by State Farm are neither controlling nor persuasive. *See Riddervold v. Saratoga Hosp.* (*In re Riddervold*), 647 F.2d 342 (2d Cir. 1981); *In re Coppie*, 728 F.2d 951 (7th Cir. 1984). Both predate *Barnhill*, which requires that federal law determine when transfers are made.

In *Riddervold*, the Second Circuit held that at the time the wage garnishment is executed, it creates a continuing levy which acts as a novation of the debtor's rights and interests in the garnished portion of his wages. 647 F.2d at 346. The court reasoned that, instead of owing the employee's entire salary to the employee, the employer owes a portion of it to the garnishor. *Id*. Thus, the court concluded that no transfer occurred during the preference period. *Id*. The court in *Riddervold* did not consider the applicability of 11 U.S.C. § 547(e)(3) to a continuing wage garnishment.

The Seventh Circuit held similarly in *Coppie* that the execution of a wage garnishment acts as a novation of the debtor's rights and interests in that portion of his wages which are garnished. 728 F.2d at 952. The court also concluded that 11 U.S.C. § 547(e)(3) was inapplicable because the debtor "will never acquire rights in the portion of his or her wages to be garnished in the future." *Id*. at 953.

We reject the approach set forth by the courts in *Riddervold* and *Coppie* since they seemingly ignore the plain language of 11 U.S.C. § 547(e)(3). It is difficult to view a garnishment order as a novation, which is a "substitution by mutual agreement of one debtor for another or of one creditor for another, whereby the old debt is extinguished." *Black's Law Dictionary* 1064 (6th Ed. 1990). The novation theory reasons that once the garnishment order has been perfected, the debtor never obtains any right to the garnished funds. This directly

February 12, 1996, September 9, 1996 and June 12, 1997. On November 12, 1997, Morehead filed a voluntary petition in Bankruptcy Court under Chapter 7. On November 14, 1997, the bankruptcy court entered an order staying wage deductions by creditors. Within the 90 days immediately preceding the filing of Morehead's bankruptcy, State Farm withheld Seven Hundred Twenty-one Dollars and Thirty-five Cents ($721.35) from her paycheck.

The trustee did not attempt to avoid the transfer. However, Morehead filed an Adversary Proceeding on January 28, 1998 to recover these funds.

The bankruptcy court found that State Farm obtained its status as a perfected lien creditor when it served the garnishment order on Morehead's employer. Because perfection occurred prior to the beginning of the 90-day preference period, the bankruptcy court held that no preferential transfer occurred. The district court agreed and affirmed. Morehead thereafter filed a timely notice of appeal.

## II.

Questions of law arising under the Bankruptcy Code are reviewed de novo. *United States v. Hunter* (*In re Walter*), 45 F.3d 1023, 1027 (6th Cir. 1995).

On appeal, Morehead argues that she did not acquire rights in the garnished wages at issue until they were actually earned. Because the Bankruptcy Code requires that the debtor acquire rights in property before it can be transferred, Morehead argues that the transfer could not occur until the wages were earned. Thus, Morehead claims that she was entitled to avoid the transfer to State Farm of wages earned during the 90-day preference period.

State Farm argues that, because it perfected the garnishment of Morehead's wages outside the 90-day preference period and because Kentucky law recognizes property rights in future earnings, the garnishment of Morehead's wages did not constitute a preferential transfer.

11 U.S.C. § 547(b) allows a transfer of the debtor's interest in property to be avoided under certain circumstances. At issue in this appeal, 11 U.S.C. § 547(b)(4)(A) authorizes the avoidance of a transfer made "on or within 90 days before the date of the filing of the petition." The Bankruptcy Code defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property. . . ." 11 U.S.C. § 101(54). Because a wage garnishment is an involuntary mode of parting with property, it constitutes a transfer under the Code.

Generally, a transfer is made at the time it is perfected. 11 U.S.C. § 547(e)(2)(B). According to the Bankruptcy Code, a transfer is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). "A more precise definition of 'perfection' is left to state law." *Battery One-Stop Ltd. v. Atari Corp.* (*In re Battery One-Stop Ltd.*), 36 F.3d 493, 495 (6th Cir. 1994). However, 11 U.S.C. § 547(e)(3) places a caveat on the general rule by providing, "For the purpose of this section, a transfer is not made until the debtor has acquired rights in the property transferred."

Federal law determines what constitutes a transfer and when it is complete. *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992). However, the definition of a transfer includes concepts of property and interests of property which are governed by state law. *Id*. at 398.

Kentucky law defines earnings as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program." Ky.Rev.Stat. § 427.005(1). Kentucky Revised Statute § 425.506(1) provides for a continuing wage garnishment which creates "a lien on all nonexempt earnings earned during the pay period in which the order is served on the employer and during those succeeding pay periods which may be designated by the order." In addition, § 425.506(2) grants

priority to orders of wage garnishment "according to the date of service on the employer." Thus, under Kentucky law, the service of a garnishment order upon the garnishee perfects the garnishment lien.

The Kentucky wage garnishment statute operates as a recognition of the garnishor's rights in the property to be garnished. However, it does not grant the debtor a property right in future earnings. In fact, Kentucky Revised Statute § 425.506(1) specifically requires that the attached wages be earned during the designated pay periods, thereby recognizing that the debtor must have rights to the wages before the garnishment lien can attach.

Regardless of when a property lien is perfected, 11 U.S.C. § 547(e)(3) requires that the debtor have rights in the property before it can be transferred. In the wage garnishment context, this cannot logically occur until the debtor performs the services that entitle her to receive the wages that are subject to garnishment. This is consistent with Kentucky law. We therefore hold that when wages are earned during the preference period, transfer of those wages pursuant to a garnishment order is avoidable under 11 U.S.C. § 547(b)(4)(A).

This Court's decision in *Battery One-Stop*, a case cited by State Farm, does not compel a contrary conclusion because that case is distinguishable on several grounds. The court in *Battery One-Stop* did not discuss or rely on 11 U.S.C. § 547(e)(3), nor was it required to since no question was raised as to whether the debtor had rights to the funds that were garnished. 36 F.3d at 494. In addition, that case did not involve a continuing wage garnishment, but the garnishment of a bank account. *Id.*

Likewise, *Conner*, another case cited by State Farm, is distinguishable. In *Conner*, the Eleventh Circuit failed to consider the applicability of 11 U.S.C. § 547(e)(3), instead relying on § 547(e)(1)(B) and holding that the transfer occurred at the time the wage garnishment was served on the employer. 733 F2d at 1562. However, *Conner* is inapposite