In re Kevin D. ENGLE and Tonya C. Engle, Debtors.

No. 12–58936.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Aug. 9, 2013.

John F. Cannizzaro, Marysville, OH, for Debtors.

*MEMORANDUM OPINION AND OR-DER ON TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAP-TER 13 PLAN*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

## I. Introduction

In order to be confirmed, a Chapter 13 plan must provide that each holder of an allowed unsecured claim will receive property having a value (as of the effective date of the plan) that "is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]" 11 U.S.C. § 1325(a)(4). When determining the amount that unsecured creditors would receive in a hypothetical Chapter 7 liquidation, the Court is required to assign values to possible recoveries from avoidance actions, including actions to avoid preferential transfers under § 547(b) of the Bankruptcy Code. A potential preference action ("Preference Action") exists in favor of the estate of Chapter 13 debtors Kevin D. Engle and Tonya C. Engle ("Debtors") and, if this were a Chapter 7 case, any net recovery from the Preference Action would be available for distribution to the Debtors' unsecured creditors. Under the terms of the Debtors' Chapter 13 plan ("Plan") (Doc. 2), however, each general unsecured creditor will receive cash payments having a value as of the effective date of the Plan that is less than the creditor's pro rata share of the estimated net recovery from the Preference Action. In an effort to address this problem, the Plan requires the Debtors to pay the actual net recovery from the Preference Action to their general unsecured creditors to the extent that Chapter 13 Trustee Jeffrey P. Norman ("Trustee") "elects to pursue the [Preference Action]

and succeeds[.]" Plan at 7. The Trustee, who has objected to confirmation of the Plan, has no obligation under the Bankruptcy Code to pursue the Preference Action and almost certainly will not do so. The Plan, therefore, does not satisfy § 1325(a)(4).

## II. Jurisdiction

The Court has jurisdiction to hear and determine this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(L).

## III. Background

On October 16, 2012 ("Petition Date"), after commencing this case by filing a petition for relief under Chapter 13 of the Bankruptcy Code, the Debtors filed the Plan. As of the Petition Date, the Debtors had no non-exempt, unencumbered property available for distribution to their unsecured creditors. *See* Schedules of Assets and Liabilities ("Schedules") (Doc. 1). In the 90 days prior to the Petition Date, however, Mary Rutan Hospital allegedly garnished $2,317.14 from Mr. Engle's wages. *See* Debtors' Brief in Support of Confirmation ("Debtors' Br.") (Doc. 22) at 1. The potential avoidance and recovery of the garnishment forms the basis of the Preference Action.

In the Plan, the Debtors, who are above-median-income debtors and thus subject to an applicable commitment period of five years, propose to pay the Trustee $250 per month for 60 months. *See* Plan at 1. It is from these monthly payments that, after other allowed claims have been paid, "allowed general unsecured claims shall be paid a dividend as provided on page one of the Plan," *id.* at 5, and "no less than the dividend set forth on page one of the plan." *Id.* at 7. The dividend set forth on page one of the Plan is 2%. *See id.* at 1. The aggregate amount of unsecured claims filed as of the bar date was $19,771.53.[1] Two percent of $19,771.53 is $395.43. The Court will refer to the cash payments in the amount of $395.43 called for in the Plan as the "Plan Distribution Amount." [2]

The Plan also includes the following provision, which the Court will refer to as the "Preference Provision":

> The Debtors believe that Mary Rutan Hospital has obtained a preference by way of wage garnishments within the preference period set forth in 11 [U.S.C. § ] 547. In the event the Trustee elects to pursue the preference and succeeds, then the dividend to unsecured creditors shall be adjusted based upon the net recovery from the preferred creditor af-

---

1. According to a stipulation filed by the parties, the aggregate dollar amount of unsecured claims filed by the bar date was $16,072.96. *See* Joint Stipulation as to the Chapter 13 Trustee's Calculation of Best Interest ("Stipulation") at 1. However, this amount apparently does not include the unsecured portion ($3,698.57) of the claim filed by Santander Consumer USA, Inc., which holds a lien on a 2006 Chevrolet Equinox owned by the Debtors. *See* Claims Register, Claim No. 4. There are no unsecured priority claims in the case.

2. In their brief in support of confirmation, the Debtors state that the "2% will be paid to

unsecured creditors by month 55" and that "[u]nder the plan as proposed, the unsecured creditors will receive an additional 5 months of plan payments which correlate to nearly $1,200.00 additional distribution." Debtors' Br. at 11 n. 14. The Plan, however, does not *require* the Debtors to make anything more than a 2% distribution to unsecured creditors. The Debtors' statement regarding an additional distribution does not take into account administrative expense claims that they may incur during the case, including the additional fees that their attorney may seek as compensation for litigating this matter.

ter deduction of attorney fees and other expenses.

*Id.* at 7.

The Trustee filed an objection and an amended objection to confirmation of the Plan ("Am.Objection") (Doc. 14) based on, among other things, his contention that the Plan "does not meet the best interest test[,]" Am. Objection at 1, which is a reference to the confirmation requirement imposed by § 1325(a)(4).[3] Using the entire $2,317.14 amount of the alleged preferential transfer ("Transfer") as the starting point, the Trustee has calculated the amount of the estimated net recovery on the Preference Action, plus the interest required to pay unsecured creditors the net recovery's value as of the effective date of the Plan,[4] as follows:

The Trustee's calculation deducts [from $2,317.14] a hypothetical Chapter 7 trustee fee of $579.00[5] pursuant to 11 [U.S.C.] § 326 and a hypothetical Chapter 7 Trustee attorney fee of $425.00[6] to determine a base best interest amount of $1,313.14. The Trustee then calculates the future value of $1,313.14 over 60 months (plan length) at a *Till* interest rate of .4375 per period (5.25% annual interest or 2 points over the Wall Street Journal Prime Rate as of the date of the bankruptcy filing) for a total best interest calculation of $1,706.34, which includes Till interest.[7]

Stipulation at 1.

The Court will refer to the Trustee's estimate of the net recovery on the Preference Action ($1,313.14) as the "Liquidation Amount."[8] Because there are no prepeti-

---

3. The Court entered an agreed order between the Trustee and the Debtors (Doc. 29) providing that the Plan would be confirmed subject to the terms set forth in the agreed order. Those terms are that the Objection would be held in abeyance pending the Court's decision in this matter; that if the Court sustains the Objection, the Debtors will have 30 days from the entry of the Court's opinion and order in which to file a motion to modify the Plan so that it complies with the Court's ruling; and that the failure to so modify the Plan would constitute a material default under the terms of the Plan and be grounds for dismissal of the case pursuant to § 1307(c)(6). The Court then entered an order confirming the Plan (Doc. 31).

4. The Plan states that "[t]he effective date of the Plan shall be the date of entry of an order confirming the Plan." Plan at 1. *See also Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 2474, 177 L.Ed.2d 23 (2010) (" '[T]he effective date of the plan' ... is the date on which the plan is confirmed and becomes binding, see § 1327(a).").

5. This amount, which the Debtors do not challenge, is calculated by multiplying $2,317.14 by 25%—the maximum percentage that a Chapter 7 trustee may receive on the first $5,000 recovered on behalf of a bankruptcy estate. *See* 11 U.S.C. § 326(a).

6. The Debtors have not challenged the hypothetical $425 attorney fee. This amount likely would be sufficient to compensate the Chapter 7 trustee's counsel for drafting a demand letter and communicating with Mary Rutan Hospital or its counsel. Depending on the hourly rate of the Chapter 7 trustee's counsel, it also might compensate counsel for drafting a complaint. For the reasons discussed in Section IV.A, however, the filing of a complaint might be unnecessary under the circumstances.

7. "Till" refers to the Supreme Court's decision in *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The Court addresses the interest-rate issue below.

8. Using a simple interest rate of 5.25% per annum as the applicable interest rate, the amount that the Trustee would require the Debtors to pay over the term of the Plan in order to satisfy the best-interests-of-creditors test is $1,706.34. This amount has a present value (as of the effective date of the Plan) equal to the Liquidation Amount only if the entire $1,706.34 is paid in one lump sum in month 60 of the Plan. The Debtors, however, estimate that all claims other than unsecured nonpriority claims will be paid in full by month 53 of the Plan and that payments to unsecured nonpriority creditors will com-

tion unsecured priority claims in the case, the Liquidation Amount is an estimate of the amount that would be distributed to holders of unsecured nonpriority claims if the estates of the Debtors were liquidated under Chapter 7. The Liquidation Amount is clearly more than the present value of the Plan Distribution Amount.

## IV. Legal Analysis

**A. Because the Present Value of the Plan Distribution Amount Is Less than the Liquidation Amount, the Plan Does Not Satisfy § 1325(a)(4).**

Section 1325(a)(4) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1325(a)(4).

 Commonly known as the best-interests-of-creditors test or the liquidation test, this provision of the Bankruptcy Code "requires two separate calculations." *Jensen v. Dunivent (In re Dewey)*, 237 B.R. 783, 788 (10th Cir. BAP 1999). "First, the court must consider the value, as of the effective date of the proposed Chapter 13 plan, of the property to be distributed to each unsecured creditor in Chapter 13, taking into account the Chap-

ter 13 administrative expenses." *Id.* Because the property to be distributed must have a certain value "as of the effective date of the plan," 11 U.S.C. § 1325(a)(4), "application of the liquidation test requires that creditors receive payments having a *present value* at least equal to what they would receive in a chapter 7 case." *In re Plascencia*, 354 B.R. 774, 782 (Bankr. E.D.Va.2006). The present value of the Plan Distribution Amount depends on the discount rate used,[9] but in any event is less than the Liquidation Amount of $1,313.14.

 "Next, the court must consider the amount that would be paid on each allowed unsecured claim if the debtor's estate were liquidated in a hypothetical Chapter 7 case, taking into account the Chapter 7 administrative expenses." *Dewey*, 237 B.R. at 788. In determining this amount, the Court must keep in mind that "[u]nder Chapter 7, a trustee in bankruptcy would have the power to avoid fraudulent and preferential transfers, thereby increasing the assets in the estate and the overall payout to creditors." *Cox v. Cox (In re Cox)*, 247 B.R. 556, 565 n. 13 (Bankr.D.Mass.2000). "Therefore, where such avoidance actions would be successful in Chapter 7, a Chapter 13 Debtor must propose a plan which would equal or exceed the payout to creditors under Chapter 7, taking into account the value of the avoidance actions." *Id. See also In re Future Energy Corp.*, 83 B.R. 470, 489 n. 33 (Bankr.S.D.Ohio 1988) (addressing creditor's argument that the Chapter 11

---

mence in month 54 of the Plan. If true, then the monthly amount paid to unsecured nonpriority creditors beginning in month 54 and ending in month 60 of the Plan would be $250 minus the Trustee's percentage fee of 4.2%, or $239.50 per month for seven months. Seven monthly payments in the amount of $239.50 equals $1,676.50, and the net present value of those payments might, depending on the discount rate used, be equal

to or exceed the Liquidation Amount. The entire amount of those payments would not, however, be distributed to the Debtors' general unsecured creditors if any administrative claims were to accrue during the case, since those claims would take priority.

9. *See Till*, 541 U.S. at 474 & n. 10, 124 S.Ct. 1951; § IV.C, *infra*.

plan did not meet § 1129(a)(7)'s best-interest test and stating that "[i]n ascertaining what creditors would receive in a hypothetical Chapter 7 liquidation, the Court is required to assign a value to possible recoveries in actions to avoid preferential or fraudulent transfers").

The Trustee's calculation of the Liquidation Amount assumes that the full amount of the Transfer can be recovered. Although the Debtors state that full recovery of the Transfer in a Chapter 7 case is "extremely unlikely," Debtors' Br. at 11, they offer no explanation for that statement. The Court finds, to the contrary, that the Trustee's assumption in this regard is not unwarranted. Mary Rutan Hospital is a going concern, the amount of the Transfer is relatively small, and Sixth Circuit authority generally supports the avoidability of preferential transfers made by way of garnishment. *See Morehead v. State Farm Mut. Auto. Ins. Co. (In re Morehead)*, 249 F.3d 445, 448 (6th Cir. 2001) ("[W]hen wages are earned during the preference period, transfer of those wages pursuant to a garnishment order is avoidable under 11 U.S.C. § 547(b)(4)(A)."). Further, the Debtors have not provided their own estimate of the net recovery on the Preference Action. The Court, therefore, will rely on the Trustee's calculation of the Liquidation Amount of $1,313.14.

After the present value of the amount that is to be distributed under a Chapter 13 plan is calculated and the amount that would be paid in Chapter 7 is estimated, the two amounts must be compared. "The Chapter 13 plan will meet the best interests of creditors test if the distribution amount determined in the first, Chapter 13, calculation is not less than the amount in the second, Chapter 7, calculation." *Dewey*, 237 B.R. at 788. By contrast, if the present value of the amount to be distributed under the Chapter 13 plan is less than the estimated amount that unsecured creditors would receive in a Chapter 7 liquidation, the plan will not pass muster under § 1325(a)(4). *See In re LaLonde*, 431 B.R. 199, 204, 206 (Bankr.W.D.Wis. 2010) ("The plan proponent bears the burden of showing that . . . the plan meets the best interests test. In other words, she must show that creditors in chapter 7 would have received no more than what her plan will pay-$13,000. . . . The debtor's burden has not been met. The chapter 7 trustee was reasonably likely to avoid the preferential transfers. . . . To be in the creditors' 'best interest,' [the debtor's] plan would have to pay creditors at least as much as these avoidable preferences, or a total of $20,625.15. This is substantially more than what her plan currently provides."); *Vincenti v. Kelly (In re Kelly)*, 378 B.R. 769, 771 (Bankr.M.D.Pa.2007) ("The current Plan proposed by the Debtor offers $4,550.04 to unsecured creditors over a 36 month period. . . . [T]he liquidation value of th[e] apparent fraudulent conveyance claim . . . is far greater than provided for in the Plan. Thus, the objection to the Plan must be sustained."); *In re Larson*, 245 B.R. 609, 616 (Bankr. D.Minn.2000) ("$19,000.00 would be available in a Chapter 7 liquidation. Although this amount would be reduced by administrative expenses, it is clear that more than $10,152.00 [the amount to be paid under the debtor's plan] would remain available for the payment of unsecured creditors. Accordingly, confirmation must be denied because the plan does not meet the best interests of creditors test.").

As already noted, the present value of the Plan Distribution Amount is less than the Liquidation Amount. The Plan, therefore, does not satisfy the best-interests-of-creditors test of § 1325(a)(4).

## B. A Distribution Conditioned on Recovery by the Trustee Does Not Satisfy § 1325(a)(4).

■ The Debtors contend that the difference between the Liquidation Amount and the present value of the Plan Distribution Amount is of no moment because the Plan contemplates that any net recovery on the Preference Action would be paid to unsecured nonpriority creditors. The Plan, however, conditions the payment of the net recovery on the Preference Action—and, indeed, conditions recovery itself—on the Trustee's election to pursue the Preference Action. The Trustee argues that this condition does not satisfy § 1325(a)(4). In response, the Debtors contend that "the condition in the plan is the exact same condition as exists in the Chapter 7 liquidation," Debtors' Br. at 3, and that "the Debtor must presume that the Trustee will perform his duties and recover preferences that would benefit the estate." *Id.* at 7.

■ The Debtors' argument is not well-taken. Although Chapter 13 trustees have the *authority* to pursue avoidance actions under Chapter 5 of the Bankruptcy Code on behalf of debtors' estates, *see In re Cecil,* 488 B.R. 200, 202–04 (Bankr. M.D.Fla.2013),[10] they have no *obligation* under the Bankruptcy Code to do so. *See id.* at 204 ("[I]t is left to the Chapter 13 trustee's judgment to determine when it is feasible and efficient to exercise the avoidance powers."); Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 6:6 (2013) ("[T]he Chapter 13 trustee does not have a duty to prosecute an avoidance action...."). The Trustee,

therefore, has no duty to file or pursue the Preference Action. Indeed, in light of the practical restrictions on Chapter 13 trustees, including a large volume of cases and limited financial resources and litigation support, they are not as likely as Chapter 7 trustees to pursue avoidance actions. *See Countrywide Home Loans v. Dickson (In re Dickson),* 427 B.R. 399, 405 (6th Cir. BAP 2010) ("More so than a Chapter 7 trustee, a Chapter 13 trustee lacks the resources to pursue meritorious avoidance claims."), *aff'd,* 655 F.3d 585 (6th Cir.2011); *Weir v. Lubbock Telco Fed. Credit Union (In re Weir),* 209 B.R. 213, 217 (Bankr. N.D.Tex.1997) ("[C]onsidering the realities of Chapter 13 practice, the debtor is the most appropriate party to seek recovery under the avoiding powers. The Chapter 13 trustee's function is to administer the case. Thus, the trustee has little incentive to set aside transfers or to recover property."); Keith Lundin & William H. Brown, *Chapter 13 Bankruptcy* 4th edition § 60. 1, www.Ch13online.com ("Chapter 13 trustees rarely seek to avoid transfers...."). For this reason, the Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has held that Chapter 13 debtors may be granted derivative standing to pursue avoidance actions. *See Dickson,* 427 B.R. at 406.[11] *See also U.S. Bank Nat'l Ass'n v. Barbee (In re Barbee),* 461 B.R. 711, 715 (6th Cir. BAP 2011).

■ Unless a Chapter 13 plan provides that the present value of property to be distributed to unsecured creditors is not less than the estimated net recovery on a viable avoidance action, the plan must provide for the prosecution of an actual avoidance action in order to satisfy § 1325(a)(4).

---

10. *See also In re Lewis* 363 B.R. 477, 481 (Bankr.D.S.C.2007) (citing cases).

11. The Sixth Circuit affirmed the BAP on other grounds and did not reach the issue of

whether Chapter 13 debtors may be authorized to pursue avoidance actions on behalf of the estate. *See Dickson,* 655 F.3d at 594.

See *Dickson,* 427 B.R. at 406 ("To meet the liquidation benchmark [of § 1325(a)(4)] that assumes lien and transfer avoidance, a Chapter 13 debtor naturally must propose a plan of reorganization that contemplates the *actual* avoidance of such liens and transfers. The Chapter 13 debtor can only do so if he or she is assured that the Chapter 13 trustee will pursue such avoidance or, if the Chapter 13 trustee declines, that he or she can do so on behalf of the estate.").[12] By conditioning the distribution of the net proceeds of the Preference Action on the Trustee's election to commence litigation that he has no obligation to bring—and almost certainly will not prosecute—the Debtors have not provided for the actual avoidance of the Transfer. Quite simply, the Debtor cannot satisfy § 1325(a)(4) by conditioning the required distribution of property on an event that almost certainly will not happen.

In support of their contention that the conditional nature of the Preference Provision does not run afoul of § 1325(a)(4), the Debtors rely on *In re Loeffler,* 2011 WL 6736066 (Bankr.D.Colo. Dec. 21, 2011). Analyzing whether a Chapter 13 plan calling for the trustee's pursuit of an avoidance action passed muster under § 1325(a)(4), the *Loeffler* court stated:

> With limited exceptions, a debtor in a chapter 13 case, unlike a debtor-in-possession in chapter 11, exercises no control over avoidance actions of the kind described in §§ 544, 547 and 548. It is the chapter 13 trustee who must pursue those recoveries. In order to satisfy the requirements of § 1325(a)(4), the Debtor's plan need do no more than provide that the net proceeds of any such recovery shall be paid out to creditors.... The Court cannot require the Debtor to personally fund payment of the hypothetical value of an asset that the Debtor does not possess and that the Code gives her no authority to recover. By its very nature, an avoidance action to recover money from a third party is unlike property that vests in the debtor upon plan confirmation, the value of which the debtor pays to creditors under his plan. Except for actions to avoid the transfer of exempt property under § 522(h), avoidance actions are not under the control of the debtor. It is the trustee who chooses to pursue an avoidance action.... That does not mean that a creditor in a chapter 13 proceeding should not expect to receive a distribution on account of assets that may be subject to recovery under §§ 544, 547 or 548. But, because a chapter 13 debtor has no control over such recovery actions, the creditor must look to the chapter 13 trustee to recover and distribute those assets exactly as it must look to the trustee to pursue those recovery actions in a chapter 7 case. So long as the Debtor's plan provides for that eventuality and provides that any such recovery must be distributed to creditors under a the Plan, it passes muster under § 1325(a)(4).

*Loeffler,* 2011 WL 6736066, at *2–4 (footnotes omitted).

In other words, the decision in *Loeffler* was predicated on the bankruptcy court's view that Chapter 13 debtors lack the authority to pursue avoidance actions on behalf of the estate.[13] The rationale of

---

**12.** The Debtors contend that it is premature for them to have standing to seek to avoid the Transfer under *Dickson* because in that case the BAP held that Chapter 13 debtors have standing to pursue avoidance actions "in the face of the Trustee failing to take action."

Debtors' Br. at 7. It seems reasonable here to view the Trustee's objection to the Preference Provision as an indication that he will decline to bring the Preference Action himself.

**13.** Similarly, in other cases outside the Sixth Circuit where Chapter 13 debtors have not

*Loeffler* is inapplicable here. Unlike the debtors in *Loeffler,* Chapter 13 debtors in this district have the ability to pursue avoidance actions on behalf of the estate under the BAP's decision in *Dickson. See also Boddie v. PNC Bank, NA,* 2013 WL 443773, at *4 (S.D.Ohio Feb. 5, 2013) ("This Court has held that a chapter 13 debtor is the proper representative of the estate for litigation purposes, although it would appear to be more accurate to state that a debtor may exercise his power to sue and be sued concurrently with the Trustee.") (internal quotation marks omitted). For this reason, the Debtors' reliance on *Loeffler* is misplaced.

The Debtors apparently believe that the Trustee's position is that § 1325(a)(4) requires them to *guarantee* a distribution to creditors in an amount equal to the Liquidation Amount. *See* Debtors' Br. at 5 ("If the Court were to sustain the Trustee's position, then the Debtors would be put in an untenable and inequitable position. The Trustee does not argue that the preference has to be brought into the estate. To the contrary, the Trustee argues that the debtor must pay the preference regardless of whether the preference is ever recovered by the estate."). And in his briefing the Trustee has in fact used language that suggests that he believes that the Debtors must provide such a guarantee. *See* Chapter 13 Trustee's Resp. to Debtors' Br. in Support of the Confirmation ("Trustee's Resp.") (Doc. 23) at 2, 3 ("While the [Preference Provision] does in part provide 100% of the net recovered by the Trustee from the garnishing creditor, it does so conditionally.... *It is not a guarantee* and it doesn't set a value of the preference recovery or an exact percentage to be paid to unsecured creditors.... The [Debtors] propose a plan at 2% with the addition of a [Preference Provision] which they claim satisfies the best interest/liquidation test. It is the Trustee's position that it does not, *as it is not an absolute guarantee* that [the required] distribution to unsecured creditors will be made under the proposed plan ... and therefore it fails the best interest/liquidation test. The dispute between the Debtors and the Chapter 13 Trustee could not be stated more succinctly.") (emphasis added).

"[T]he best interest of creditors test of Code § 1325(a)(4) will preclude confirmation of a plan in the absence of prosecution of an avoidance action when the debtor cannot pay enough out of income so that unsecured creditors receive what they

been permitted to exercise avoidance powers, courts have held that any § 1325(a)(4) issue can be resolved by a plan provision providing for the Chapter 13 trustee to avoid the transfer. *See, e.g., Ryker v. Current (In re Ryker),* 315 B.R. 664, 670 (Bankr.D.N.J.2004) ("Similarly, the exercise of avoidance powers by a Chapter 13 trustee can be a means to fulfill the duty to '... assist the debtor in performance under the plan,' set forth in § 1302(b)(4). Nor is it necessarily contrary to the purpose or functioning of Chapter 13 for the Chapter 13 trustee to be the sole party to exercise the avoidance powers. It would certainly be less cumbersome if the Chapter 13 debtor enjoyed the independent authority to proceed with an avoidance action. However, there is no reason to expect that a Chapter 13 trustee will refuse to act on an avoidance claim that has merit. Further, the Chapter 13 trustee need not personally prosecute each avoidance action. For example, the trustee can retain debtor's counsel as special counsel pursuant to § 327(e) in order to prosecute the matter."). *See also Collier on Bankruptcy* ¶ 1325.05[2][d] ("[T]he existence of a potential avoidable transfer does not necessarily require the debtor to pay into the plan the likely net recovery to the estate taking into account collectability and administrative expenses. It should be sufficient for the debtor, who may not have the power to assert the avoiding power, to provide in the plan that any recovery by the trustee will be paid to unsecured creditors." (citing *Loeffler* )).

would get in a Chapter 7 case." Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, *Chapter 13 Practice & Procedure* § 6:6 (2013). In many Chapter 13 cases, debtors have the financial ability to pay the estimated recovery on the avoidance action over time with interest and elect to do so. *See* Lundin & Brown, *supra*, § 60.1 ("If there are avoidable transfers, most Chapter 13 debtors propose to distribute the value of any hypothetical recovery through the plan without actually recovering the property that was transferred."). A debtor's election to pay the estimated net recovery satisfies § 1325(a)(4). *See In re Gordon*, 2005 Bankr.LEXIS 1651, at *11 (Bankr.D.Or. Aug. 31, 2005) ("A number of cases have recognized that a debtor may pay the value of an avoidance action, without imposing any requirement that the action actually be pursued."). Under this approach, no attempt at an actual recovery on the avoidance action is made, and Chapter 13 debtors therefore make payments to creditors based on the estimated net recovery.

■ Debtors, however, sometimes elect to bring avoidance actions in order to fund their Chapter 13 plans. *See Houston v. Eiler (In re Cohen)*, 305 B.R. 886, 890, 900 (9th Cir. BAP 2004) ("The Cohens filed a chapter 13 bankruptcy on May 24, 2002, and soon thereafter settled the tort claim for $195,000. In an effort to use the proceeds to help fund their plan, debtors proposed to contest the secured status of appellants in the proceeds of the personal injury suit. The chapter 13 plan provided

that the order of confirmation would not preclude debtors from suing to avoid appellants' liens.... Since debtors who need the proceeds of a recovery to fund a chapter 13 plan have greater incentives than the chapter 13 trustee to advocate effectively, their ability to protect their interests would be hindered if they were required to rely on the trustee.") (footnote omitted). Debtors who bring avoidance actions are not bound by the anticipated net recovery on the avoidance action, which is necessarily only an estimate. *Cf. In re W.R. Grace & Co.*, 475 B.R. 34, 142 (D.Del.2012) ("[T]he valuation of claims in a hypothetical Chapter 7 liquidation is 'not an exact science' because the process entails a considerable degree of speculation."). Instead, debtors electing to pursue an avoidance action themselves must pay the *actual* net recovery, if any, to unsecured creditors. After all, unsecured creditors would receive no more than the actual net recovery in a Chapter 7 liquidation. Section 1325(a)(4) does not require the Debtors to guarantee that their pursuit of the Preference Action—if that is the alternative they elect—will result in a payment to unsecured creditors at least equal to the Liquidation Amount. The problem here is that the Plan, while not requiring the Debtors to make payments with a present value at least equal to the Liquidation Amount, also does not obligate them to pursue the Preference Action on behalf of unsecured creditors. The Plan, therefore, fails the best-interests-of-creditors test of § 1325(a)(4).[14]

14. As explained in footnote 8 above, if the best-case scenario posited by the Debtors turns out to be correct, then the monthly amounts paid to unsecured nonpriority creditors beginning in month 54 and ending in month 60 of the Plan would aggregate $1,676.50, and the present value of the payments might, depending on the discount rate used, equal or exceed the Liquidation Amount of $1,313.14. Again, however, the entire amount of those payments would not be distributed to the Debtors' general unsecured creditors if the Debtors' attorney were to seek additional compensation for litigating this matter or if any other administrative claims (or claims allowed under § 1305(b)) were to accrue during the case. A Chapter 13 plan under which unsecured creditors will receive

## C. The Discount Rate Proposed by the Debtors Is Insufficient.

 Because the property distributed to each unsecured creditor under a Chapter 13 plan must have a value *as of the effective date of the plan* that is no less than the amount the creditor would receive in a Chapter 7 liquidation, plan payments must be discounted to their present value as of the plan's effective date. *See Till,* 541 U.S. at 474 & n. 10, 124 S.Ct. 1951 ("[T]he Bankruptcy Code includes numerous provisions that . . . require a court to discoun[t] . . . [a] stream of deferred payments back to the[ir] present dollar value. . . . *See [e.g.,]* 11 U.S.C. § 1325(a)(4)[.]") (internal quotation marks and citation omitted); *Hardy v. Cinco Fed. Credit Union (In re Hardy),* 755 F.2d 75, 77 (6th Cir.1985) ("The sole issue on appeal is whether the value of property to be distributed under a Chapter 13 plan [to unsecured creditors] must be reduced to present value when applying the 'best interest of creditors test' contained in § 1325(a)(4). . . . The express wording of the statute and the legislative history support the bankruptcy judge's conclusion that the value of property to be distributed under a Chapter 13 plan must be reduced to present value."); *Cardinal Fed. Sav. & Loan Ass'n v. Colegrove (In re Colegrove),* 771 F.2d 119, 121 (6th Cir.1985) ("[I]n [*Hardy* ] the court affirmed the bankruptcy court's order denying confirmation of a Chapter 13 plan because of its failure to include interest on the amount due Cinco Federal Credit Union, an unsecured creditor. The court interpreted [§ 1325(a)(4) ] to require interest on all deferred payments to be made under the plan. In our view, a contrary conclusion would prevent the creditor from realizing the full present value of the amount owed.") (footnote omitted).

Although the Debtors and the Trustee agree that the language "as of the effective date of the plan" used in § 1325(a)(4) requires debtors to provide interest to unsecured creditors receiving payments over time, they do not agree on the appropriate interest rate in this case. The Debtors contend that "the Bankruptcy Code compels using a interest rate that solely accounts for expected inflation," Debtors' Br. at 10, and that "the interest rate on short-term Treasury notes is the most accurate index for determining the proper discount rate," a rate that "today stands at .88%." *Id.* By contrast, the Trustee's "position based on *Till,* is that an interest rate of 2 points over the Wall Street Journal prime rate, as of the day of filing, should be set as the effective *Till* interest rate in all Chapter 13 cases," Trustee's Resp. at 3–4, a rate that the Trustee pegs at 5.25% per annum. *See* Stipulation at 1.

The interest rate question in *Till* arose in the Chapter 13 cramdown context; the section of the Bankruptcy Code at issue was § 1325(a)(5), under which a court may confirm a Chapter 13 plan, if at all, only if each holder of an allowed secured claim (1)

---

the distributions to which they are entitled under the best-interests-of-creditors test only if the holders of more senior claims are not paid ahead of them does not satisfy § 1325(a)(4). *See In re Jones,* 301 B.R. 840, 845 (Bankr.E.D.Mich.2003) ("Debtor's Chapter 13 Plan in this case merely provides that general unsecured claims shall be paid 'their pro rata share of funds remaining after payment of all superior classes of creditors'. . . . The Plan cannot be confirmed because it fails

to give general unsecured creditors notice of how much they are likely to receive and because it cannot be determined whether the plan will pay the unsecured creditors what they would receive in a Chapter 7. Confirmation must be denied because the Plan fails to meet the requirement of section 1325(a)(4), the best interest of . . . creditors test."); *In re Bass,* 267 B.R. 812, 816–17 (Bankr.S.D.Ohio 2001).

accepts the plan, (2) receives the property securing its claim or (3) retains its lien and receives "value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [that] is not less than the allowed amount of such claim[.]" 11 U.S.C. § 1325(a)(5)(B). Like § 1325(a)(4), § 1325(a)(5)(B) refers to the value *as of the effective date of the plan* and thus requires the use of a discount rate to determine the present value of a stream of payments. In construing this provision, the Supreme Court in *Till* adopted a "formula approach" that "begins by looking to the national prime rate [reflecting] the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default" and then "adjust[s] the prime rate" based on the risk of non-payment. *Id.* at 478–79, 124 S.Ct. 1951. "Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach ... requires a bankruptcy court to adjust the prime rate accordingly." *Id.* at 479, 124 S.Ct. 1951. While not endorsing any particular risk adjustment, the Supreme Court noted that "other courts have generally approved adjustments of 1% to 3%," *id.* at 480, 124 S.Ct. 1951 and also stated that "[t]he appropriate size of th[e] risk adjustment depends ... on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan" and that "the debtor and any creditors may present evidence about the appropriate risk adjustment." *Id.* at 479, 124 S.Ct. 1951.

While *Till* was decided in the context of a cramdown of a *secured* claim in a Chapter 13 case, and this case involves *unsecured* claims, that difference does not counsel against applying *Till* or in favor of using a discount rate as low as the Debtors suggest. *See In re Evans,* 2010 WL 2976165, at *4 (Bankr.M.D.N.C. July 28, 2010) ("Although the present case involves unsecured claims under section 1325(a)(4) rather than secured claims under section 1325(a)(5)(B)(ii) as was the case in *Till,* this court believes that the formula approach described in *Till* is the appropriate approach to determining the rate of interest required in this case to provide the unsecured creditors with the present value of their claims."); *In re Hoskins,* 405 B.R. 576, 588 (Bankr.N.D.W.Va.2009) (same). Indeed, the Supreme Court in *Till* stated that "[w]e think it likely that Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these [other] provisions." *Till,* 541 U.S. at 474, 124 S.Ct. 1951. The other provisions referenced by the Supreme Court included Chapter 13's version of the best-interests-of-creditors test, § 1325(a)(4). *See id.* at 474 n. 10, 124 S.Ct. 1951. *See also Collier on Bankruptcy* at ¶ 1325.05[2][b] ("The principles followed in calculating present value interest under section 1325(a)(4) should be similar to those followed under section 1325(a)(5), because both sections share the goal of compensating creditors for a delay in payments they would otherwise receive immediately.") (footnote omitted).

Based on the Court's independent research, it appears that it is only in the context of cases involving solvent debtors that bankruptcy courts have used discount rates lower than a *Till* rate when calculating the present value of a future stream of payments in order to satisfy the best-interests test. *See, e.g., In re Smith,* 431 B.R. 607, 611 (Bankr.E.D.N.C.2010); *In re Suggs,* 2011 WL 710488, at *2 (Bankr. E.D.N.C. Feb. 22, 2011) (stating that the federal judgment rate "mirrors the reality

... that unsecured creditors with the benefit of a solvent debtor are faced with minimal risk"). *See also In re Cook,* 322 B.R. 336, 345 (Bankr.N.D.Ohio 2005) ("Due to the amount of equity in Debtor's estate ... prime minus one-half of one percent, is more than sufficient to satisfy the requirements of 11 U.S.C. § 1325(a)(4) [with respect to unsecured creditors]."). Here, using a discount rate lower than the *Till* rate from the date of confirmation to the date payments are completed under the Plan is not appropriate. Rather, the discount rate selected must compensate creditors for the risks inherent in waiting to receive payments over time from an insolvent debtor.

The Court, while not deciding the minimum interest rate that would satisfy the requirement of § 1325(a)(4) in this or any other case, concludes that using the rate proposed by these insolvent Chapter 13 debtors is not justified. *Cf. In re Schuckenbrock,* 2012 WL 5360997, at *3 (Bankr.D.Kan. Oct. 29, 2012) ("Under the circumstances, all the Court is prepared to do at this point is reject the Debtors' argument that a risk-free discount or interest rate would be sufficient to satisfy § 1225(a)(4)."). The rate proposed by the Trustee, however, is appropriate. *See Evans,* 2010 WL 2976165, at *4 ("Guided by the methodology described in *Till* involving the use of the national prime rate with a risk adjustment, a presumptive *Till* interest rate is originated by the chapter 13 trustees[,] which is reviewed quarterly and, if appropriate, adjusted for any changes that may be indicated. When the petition in this case was filed, the *Till* rate stood at 5.25% based upon a national prime rate of 3.25% with a 2% upward adjustment for risk.").

## V. Conclusion

In order to satisfy § 1325(a)(4), the Plan must provide that holders of allowed unsecured claims will receive distributions of property having a value (as of the effective date of the Plan) that is not less than the amount that would be paid on the claims in a Chapter 7 liquidation of the Debtors' estates. The Plan fails to provide for such distributions to the holders of allowed unsecured nonpriority claims. The Objection, therefore, is **SUSTAINED.**

**IT IS SO ORDERED.**