# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30274

United States Court of Appeals
Fifth Circuit

**FILED**
March 13, 2017

Lyle W. Cayce
Clerk

In the Matter of: CHRISTON JACKSON

      Debtor

TOWER CREDIT, INCORPORATED,

      Appellant

v.

MARTIN A. SCHOTT,

      Appellee

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

In 2009, Tower Credit, Incorporated, obtained a money judgment in a Louisiana state court against Christon Jackson. Seeking to collect, Tower obtained a garnishment order, served it on Jackson's employer on January 19, 2012, and began collecting Jackson's garnished wages. On November 17, 2012, Jackson filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Middle District of Louisiana. The bankruptcy court appointed Martin Schott as trustee to administer Jackson's estate. In 2014,

No. 16-30274

the trustee initiated this adversary action, seeking to void the garnishments collected by Tower within ninety days prior to Jackson's filing for bankruptcy as preferential transfers pursuant to 11 U.S.C. § 547(b).  The trustee initially sought the return of $2,034.81, but the parties have since stipulated that the actual amount at issue is $1,756.04.  The bankruptcy court ultimately granted summary judgment in favor of the trustee, and the district court affirmed on appeal.  Tower timely appealed to this court, arguing that the garnished wages should be considered transferred on the date the garnishment order was served, before the preference period, and therefore that the trustee is not entitled to recover them.  We disagree and therefore affirm.

## DISCUSSION

On appeal in a bankruptcy case, we apply the same standard of review that the district court applied: "[T]he bankruptcy court's factual findings are reviewed for clear error; its legal conclusions and mixed questions of fact and law, de novo*." In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (italics removed). Section 547(b) provides, in relevant part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; . . .
>     (B) . . .
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2

No. 16-30274

Tower contests only the fourth element, arguing that Jackson's interest in the garnished wages was transferred to Tower when it served the garnishment order on Jackson's employer, more than ninety days before the filing of Jackson's petition.

"What constitutes a transfer and when it is complete is a matter of federal law." *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992) (citation and internal quotation marks omitted). State law generally determines the nature of property interests involved in purported transfers, but only "[i]n the absence of controlling federal law." *See id.* at 398; *see also Local Loan Co. v. Hunt*, 292 U.S. 234, 243-45 (1934) (declining to adhere to an Illinois state-law fiction that "an assignment of future wages creates a lien effective from the date of the assignment, which is not invalidated by the assignor's discharge in bankruptcy" and stating, "Local rules subversive [to the general purpose and policy of the bankruptcy act] cannot be accepted as controlling the action of a federal court.").

Section 547(e) provides the governing principles that determine the timing of a transfer. As relevant to the instant case, a transfer is generally made at the time it is "perfected," § 547(e)(2)(B), which, in the context of non-real property, occurs when "a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." § 547(e)(1)(B). However, § 547(e)(3) qualifies that general principle and provides that "a transfer is not made until the debtor has acquired rights in the property transferred." *See also In re Latham*, 823 F.2d 108, 110 (5th Cir. 1987) (stating, "[A] lien that is perfected outside the preference period does not attach to property rights transferred to the Debtor during the preference period" and citing *Tabita v. IRS*, 38 B.R. 511, 513 (E.D. Pa. 1984) for the proposition that

3

No. 16-30274

"wages earned within preference period are subject to preference even though writ of attachment was served beyond the preference period").[1]

Tower contends that as soon as it served the garnishment order on Jackson's employer, no creditor on a simple contract could have acquired a judicial lien superior to Tower's interest. Thus, it argues that the transfer of the interest in Jackson's garnished wages was perfected at that time pursuant to § 547(e)(1)(B). That would be true, except for the additional instruction of § 547(e)(3), which requires the debtor to have rights in the property before any transfer can occur.

In *Local Loan*, the Supreme Court held, albeit in the context of a bankruptcy discharge dispute, "The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence."[2] 292 U.S. at 243. Thus, as the Sixth Circuit explained in *In re Morehead*, 249 F.3d 445, 448 (6th Cir. 2001), in the wage garnishment context, a debtor cannot logically obtain rights in her future wages until she performs the services that entitle her to receive those wages. 249 F.3d at 448. The *Morehead* court therefore held that "when wages are earned during the preference period, transfer of those wages pursuant to a garnishment order is avoidable under . . . § 547(b)[ ]." *Id.* In other words, because Jackson had not earned the disputed

---

[1] *Latham*'s favorable citation of *Tabita* for this proposition is arguably dicta, as *Latham* did not involve wage garnishment. *See* 823 F.2d at 109.

[2] The Bankruptcy Act was repealed in 1978 and replaced by the current Bankruptcy Code. *See* Bankruptcy Reform Act of 1978, 112 Stat. 2549, 2682. However, the Court in *Local Loan* grounded its holding in the purpose of the Bankruptcy Act to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *See* 292 U.S. 234 at 244 (internal quotation marks omitted). This remains a primary purpose of the Bankruptcy Code as well, and the courts have continued to cite and apply *Local Loan* for this proposition. *See, e.g.*, *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *In re Shcolnik*, 670 F.3d 624, 632 (5th Cir. 2012). We therefore conclude that *Local Loan*'s holding that unearned, future wages are not property within the meaning of the bankruptcy laws remains valid and binding upon us.

wages before the ninety-day preference period, he had acquired no rights to those wages and, under § 547(e)(3), could not have transferred such rights to Tower prior to the preference period. *See Morehead*, 249 F.3d at 448; *see also Local Loan*, 292 U.S. at 243; *Latham*, 823 F.2d at 110.

Tower asserts that *Morehead* is "limited to states wherein the transfer does not occur when the garnishment is served." But it is federal law, not state law, that determines when the transfer occurred, *Barnhill*, 503 U.S. at 397, and § 547(e)(3) requires that a debtor acquire rights in the property in question before any transfer is made. That is not to say that state law is never relevant to the application of § 547(e)(3); indeed, in the absence of controlling federal law, state law will determine whether the debtor had acquired rights in the property. *See Barnhill*, 503 U.S. at 397. There is controlling federal law in the context of a debtor's rights in future wages, however, and it provides that "[t]he earning power of an individual . . . is not translated into property . . . until it has brought earnings into existence." *See Local loan*, 292 U.S. at 243. Moreover, Tower has not even contended that Louisiana law provides employees with present rights in their unearned, future wages.

Tower cites three cases from the 1980s in which other circuits held that a transfer of garnished wages occurred at the time the garnishment was served on the employer. *See In re Conner*, 733 F.2d 1560 (11th Cir. 1984); *In re Coppie*, 728 F. 2d 951 (7th Cir. 1984); *In re Riddervold*, 647 F.2d 342 (2d Cir. 1981). In *Conner*, the Eleventh Circuit relied on § 547(e)(1)(B) and held that, because no contract creditor could obtain a superior judicial lien after a garnishment was executed, the transfer occurred at the time of the execution. 733 F.2d at 1562. In *Riddervold*, the Second Circuit held that at the time the garnishment was executed it created a "continuing levy," which under New York law acted as a novation of all of the debtor's rights in his wages, and thus that there was no transfer during the preference period. 647 F.2d at 346. Importantly, neither

No. 16-30274

*Riddervold* nor *Conner* even considered the effect of § 547(e)(3), and both predated *Barnhill,* in which the Supreme Court held that federal law governs the determination of whether and when a transfer occurred. *See Morehead*, 249 F.3d at 448-49 (discussing and rejecting *Riddervold* and *Conner*).

In *Coppie,* the Seventh Circuit held, similar to *Riddervold,* that the execution of a garnishment acted as a novation of all of the debtor's interests in the wages under Indiana law so that there could not have been a transfer within the preference period. 728 F.2d at 953. Addressing § 547(e)(3), the court found it inapplicable because the debtor "will never acquire rights in the portion of his or her wages to be garnished in the future" as those were "irrevocably transferred to the garnishment plaintiff." *Id.*

In our view, the *Coppie* court's conclusion that the debtor's rights in his future wages were "irrevocably transferred" at the time the garnishment order was entered conflicts with § 547(e)(3)'s instruction that no transfer of an interest in property is made before the debtor acquires rights in the property. Like *Conner* and *Riddervold, Coppie* predated *Barnhill,* and it appears that the Seventh Circuit itself no longer considers *Coppie*'s holding good law: that court subsequently concluded that pre-*Barnhill* cases holding that a transfer occurs when a notice of garnishment is served, including *Conner,* did not survive the Supreme Court's decision in *Barnhill. See In re Freedom Grp., Inc.,* 50 F.3d 408, 412 (7th Cir. 1995).

The trio of cases cited by Tower has been roundly criticized on the grounds discussed. *See, e.g.*, *Morehead*, 249 F.3d at 448-49; *Freedom Group*, 50 F.3d at 412; *In re White,* 258 B.R. 129, 134 (Bankr. D.N.J. 2001); *In re Mays,* 256 B.R. 555, at 560 n.7; *Tabita*, 38 B.R. at 513; *In re Dunn*, 56 B.R. 275, 278 (Bankr. M.D. La. 1985); *In re Perry*, 48 B.R. 591, 598 (Bankr. M.D. Tenn. 1985); *see also* 5 Collier on Bankruptcy ¶ 547.05 (16th ed.) ("The analysis of these three appellate courts is wrong. . . . The timing scheme in section 547(e) does

not exclude garnishment liens.  Until the debtor earns the wages, there is no property that the creditor can garnish or that the debtor can transfer.  The creditor's right to the particular funds that are garnished exists only because the debtor is entitled to be paid those funds as wages; it does not exist unless the debtor first acquires the right to be paid.").  We join the other courts that have rejected the cases cited by Tower and decline to follow those cases.

The combination of Supreme Court precedent and the overwhelming weight of persuasive authority applying § 547(e)(3) make clear that a debtor's wages cannot be transferred until they are earned.  Thus, we hold that a creditor's collection of garnished wages earned during the preference period is an avoidable transfer made during the preference period even if the garnishment was served prior to that period.  We therefore AFFIRM the district court's judgment.